# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Tamera Brown, et al., | : | Case No. 1:18cv412 |
| Plaintiffs, | : | Judge Dlott |
| | | Magistrate Judge Litkovitz |
| | : | |
| v. | : | **DEFENDANT PETTIS' AND** |
| City of Cincinnati, et al., | : | **DEFENDANT SENTINEL POLICE** |
| | | **ASSOCIATION'S MOTION FOR** |
| Defendants. | : | **JUDGMENT ON THE PLEADINGS** |
| | : | |

_____

Defendants Danita Pettis and the Sentinel Police Association hereby move for judgment

on the pleadings, pursuant to Fed. R. Civ. P. 12(c).  All claims should be dismissed as a matter of

law.

Respectfully submitted,

_s/ Alphonse A. Gerhardstein_
Alphonse A. Gerhardstein (0032053)
Gerhardstein and Branch Co. LPA
441 Vine Street, Suite 3400
Cincinnati, Ohio 45202
(513) 621-9100 / fax (513) 345-5543
agerhardstein@gbfirm.com
_Trial Attorneys for Defendants Sentinel Police_
_Association and Lieutenant Pettis in her Individual_
_Capacity_

# TABLE OF CONTENTS

**MEMORANDUM IN SUPPORT** .................................................................................. **1**

**I. SUMMARY** ................................................................................................................ **1**

**II. STATEMENT OF FACTS ALLEGED BY PLAINTIFFS** .................................... **2**

A.  The Consent Decrees ............................................................................................. 2

B.  Brown and Ludgatis Complaint of "Hostile Work Environment" ......................... 2

C.  Transfer of Pettis, Brown, and Ludgatis ............................................................... 3

D.  Investigation of Pettis, Brown, and Ludgatis ....................................................... 4

E.  Allegations of Discrimination ............................................................................... 5

F.  Speech .................................................................................................................... 6

**III.  STANDARD OF REVIEW** .................................................................................. **6**

**IV.  ARGUMENT** .......................................................................................................... **6**

A.  Plaintiffs Have No Standing for Injunctive Relief ............................................... 6

B.  No Employment Discrimination Under Title VII ................................................. **9**

   1. No Liability Against Defendants Pettis and Sentinels for Alleged Employment Violations
.................................................................................................................................... 10

   2. Defendant Pettis Did Not Create A Hostile Work Environment ....................... 10

      a. Alleged Harassment was Not Based on Sex or Race ...................................... 11

      b. Work Environment was Not Hostile ............................................................... 12

      c.  Employer is Not Liable .................................................................................. 15

   3. No Retaliatory Transfer ...................................................................................... 16

      a. Plaintiffs Did Not Engage in Protected Activity Until March 2018 ............. 16

      b. Transfer Was Not Materially Adverse ........................................................... 17

      c. There is No Causal Connection Between the March 2018 Protected Activity and the
December 2017 Transfer .................................................................................... 18

      d.  Defendants Had Legitimate Non-Retaliatory Reason for Transfer and Plaintiffs have
Presented No Allegations of Pretext ................................................................. 19

C.  No Employment Discrimination Under Other Federal or State Law ................. 19

D.  No First Amendment Violation ........................................................................... 20

**V.  CONCLUSION** ..................................................................................................... **24**

TABLE OF AUTHORITIES

Cases

*Aquino v. Honda of Am., Inc.*,
     158 F. App'x 667 (6th Cir. 2005) ................................................................ 19

*Armstrong v. Whirlpool Corp.*,
     363 F. App'x 317 (6th Cir. 2010) ................................................................ 14

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009) ............................................................................ 6, 18

*Baker v. Carr*,
     369 U.S. 186 (1962) ................................................................................. 9

*Black v. Zaring Homes, Inc.*,
     104 F.3d 822 (6th Cir.1997) ...................................................................... 13

*Boulton v. Swanson*,
     795 F.3d 526 (6th Cir. 2015) ................................................................ 23, 24

*Bowman v. Shawnee State Univ.*,
     220 F.3d 456 (6th Cir.2000) ...................................................................... 13

*Braun v. Ultimate Jetcharters*, LLC,
     828 F.3d 501 (6th Cir. 2016) ...................................................................... 20

*Burlington Northern and Santa Fe Ry. Co. v. White*,
     548 U.S. 53 (2006) ................................................................................. 18

*Burnett v. Tyco Corp.*,
     203 F.3d 980 (6th Cir.2000) ...................................................................... 13

*Church v. City of Huntsville*,
     30 F.3d 1332 (11th Cir.1994) ....................................................................... 8

*Clark v. United Parcel Service, Inc.*,
     400 F.3d 341 (6th Cir. 2005) ...................................................................... 14

*Cleveland Branch, NAACP v. City of Parma*,
     263 F.3d 513 (6th Cir.2001) ........................................................................ 7

*Collette v. Stein–Mart, Inc.*,
     126 F. App'x 678 (6th Cir.2005) ................................................................. 15

ii

*Connick v. Myers*,
   461 U.S. 138 (1983)................................................................................................ 23, 24

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006).................................................................................................... 7

*Dambrot v. Central Michigan University*,
   55 F.3d 1177 (6th Cir. 1995) .................................................................................... 23

*Dixon v. Gonzales*,
   481 F.3d 324 (6th Cir. 2007) ............................................................................... 16, 19

*Faragher v. City of Boca Raton*,
   524 U.S. 775 (1998)........................................................................................... 12, 14

*Fieger v. Mich. Supreme Court*,
   553 F.3d 955 (6th Cir. 2009) ............................................................................... 6, 7, 8

*Flast v. Cohen*,
   392 U.S. 83 (1968)...................................................................................................... 9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
   528 U.S. 167 (2000).................................................................................................... 7

*Graham v. National Collegiate Athletic Ass'n*,
   804 F.2d 953 (6th Cir. 1986) .................................................................................... 20

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982).................................................................................................. 21

*Harris v. Forklift Systems, Inc.*,
   510 U.S. 17 (1993).................................................................................................... 12

*Hawkins v. Anheuser-Busch, Inc.*,
   517 F.3d 321 (6th Cir. 2008) .................................................................................... 15

*Hostettler v. College of Wooster*,
   895 F.3d 844 ............................................................................................................. 20

*Jackson v. Quanex Corp.*,
   191 F.3d 647 (6th Cir.1999) ..................................................................................... 15

*Jackson v. SelectTech Services Corp.*,
   No. 3:09-cv-245, 2012 WL 252728 (S.D. Ohio Jan. 26, 2012)............................... 13

*Johnson v. Univ. of Cincinnati*,
   215 F.3d 561 (6th Cir. 2000) .................................................................................... 20

*Jones v. Johanns*,
    264 F. App'x 463 (6th Cir. 2007)..................................................................... 16

*Judy v. Pingue*, 2:08-cv-859,
    2:08-cv-859, 2009 WL 4261389 (S.D. Ohio Nov. 25, 2009) ........................... 8

*Kocsis v. Multi–Care Mgmt., Inc.*,
    97 F.3d 876 (6th Cir.1996) ............................................................................. 17

*Lansing v. City of Memphis*,
    202 F.3d 821 (6th Cir. 2000) .......................................................................... 20

*Laster v. City of Kalamazoo*,
    746 F.3d 714 (6th Cir. 2014) ..................................................................... 16, 17

*Lewis v. Casey*,
    518 U.S. 343 (1996).......................................................................................... 7

*Little v. BP Exploration & Oil Co.*,
    265 F.3d 357 (6th Cir. 2001) .......................................................................... 10

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983)....................................................................................... 7, 8

*Morris v. Oldham County Fiscal Court*,
    201 F.3d 784 (6th Cir.2000) ........................................................................... 13

*Noble v. Brinker Int'l, Inc.*,
    391 F.3d 715 (6th Cir. 2004) .......................................................................... 20

*Oncale v. Sundowner Offshore Servs.*,
    523 U.S. 75 (1998)...................................................................................... 9, 11

*O'Shea v. Littleton*,
    414 U.S. 488 (1974).......................................................................................... 8

*Pearson v. Callahan*,
    555 U.S. 223 (2009)........................................................................................ 21

*Pickering v. Board of Education*,
    391 U.S. 563 (1968)................................................................................... 22, 23

*Randolph v. Ohio Dep't of Youth Servs.*,
    453 F.3d 724 (6th Cir. 2006) ............................................................... 11, 12, 14

*Reed v. Proctor & Gamble Mfg. Co.*,
    556 F. App'x 421 (6th Cir. 2014)..................................................................... 13

*Risinger v. Ohio Bureau of Workers' Compensation,*
    883 F.2d 475 (6th Cir. 1989) ................................................. 10

*Rorrer v. City of Stow,*
    743 F.3d 1025 (6th Cir. 2014) ............................................... 20

*Saucier v. Katz,*
    533 U.S. 194 (2001) ............................................................. 21

*Schlesinger v. Reservists Comm. to Stop the War,*
    418 U.S. 208 (1974) ............................................................... 9

*Silberstein v. City of Dayton,*
    440 F.3d 306 (6th Cir. 2006) ............................................... 21

*Simmonds v. Genesee Cty.,*
    682 F.3d 438 (6th Cir. 2012) ............................................... 21

*Sprint Commc'ns Co., L.P. v. APPCC Servs., Inc.,*
    554 U.S. 269 (2008) ............................................................... 6

*Tomka v. Seiler Corp.,*
    66 F.3d 1295 (2d Cir.1995) ................................................. 10

*Tucker v. Middleburg-Legacy Place,*
    539 F.3d 545 (6th Cir. 2008) ................................................. 6

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ......................................................... 6, 18

*Waldo v. Consumers Energy Co.,*
    726 F.3d 802 (6th Cir. 2013) ............................................... 15

*Warth v. Seldin,*
    422 U.S. 490 (1975) ............................................................... 9

*Wathen v. Gen. Elec. Co.,*
    115 F.3d 400 (6th Cir. 1997) ............................................... 10

*West v. Tyson Foods, Inc.,*
    374 F. App'x 624 (6th Cir.2010) ......................................... 15

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990) ............................................................... 8

*Williams v. GMC,*
    187 F.3d 553 (6th Cir.1999) ............................................... 14

*Williams v. United Dairy Farmers*,
    20 F. Supp. 2d 1193 (S.D. Ohio 1998) ................................................................... 19
*Yates v. Avco Corp.*,
    819 F.2d 630 (6th Cir.1987) ...................................................................................... 17

Statutes

42 U.S.C. § 1981 ........................................................................................................ 19, 20
42 U.S.C. § 1983 ........................................................................................................ 20, 21
42 U.S.C. § 2000e .................................................................................................. 1, 10, 17
O.R.C. 4112.02 ................................................................................................................ 20
U.S. Const. art. III, § 2 ..................................................................................................... 6

## MEMORANDUM IN SUPPORT

### I. SUMMARY

Plaintiffs Tamera Brown and Joy Ludgatis filed suit on June 12, 2018 against Defendants Danita Pettis, the Sentinels Police Association ("the Sentinels"), the City of Cincinnati, and numerous City officials. They alleged discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., as well as violations of their free speech rights and violations of state law.

While the Plaintiffs' allegations are of a run of the mill employment variety, they not only seek an injunction prohibiting allegedly illegal employment practices, compensatory damages, and attorney's fees, but also the termination of consent decrees the City of Cincinnati entered into to remedy historical discrimination by the police department against female and black officers.

Defendants Danita Pettis and the Sentinels submit this motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. As an initial matter, the Plaintiffs do not have standing to challenge the Consent Decrees. The Consent Decrees concern hiring and promotion, and Plaintiffs do not make any allegations suggesting that they were not hired or were not promoted.

Secondly, their employment discrimination and retaliation claims all fail. The allegations are insufficient to support that the Plaintiffs experienced a hostile work environment under Title VII, and insufficient to support that they suffered an adverse employment action when they were transferred, and thus all employment claims fail.

Third, they have alleged no clearly established free speech violations.

Defendants Pettis and the Sentinels vigorously dispute the facts that Plaintiffs have alleged against them.  However, even accepting all of the Plaintiffs' allegations as true, they do not state any claims.  Because all of Plaintiffs' claims fail as a matter of law, Defendants Pettis and Sentinels respectfully request this Court dismiss all claims.

## II. STATEMENT OF FACTS ALLEGED BY PLAINTIFFS

### A. The Consent Decrees

In 1981, the City of Cincinnati entered into a consent decree with the United States Department of Justice to resolve a lawsuit alleging race and sex discrimination in the police department.  The goal of the consent decree was to increase hiring and promotion of qualified black and female officers in the police department, following a history of underrepresentation of those groups.  (Doc. 23, p. 27).

In 1987, the City of Cincinnati resolved another lawsuit, alleging discrimination against black and female officers.  The consent decree established a system to increase the number of qualified black and female officers receiving promotions at the rank of lieutenant and above. (Doc. 23, p. 20).  That system is still in force today.

Plaintiffs have made no allegations that their employer failed to hire or failed to promote them.

### B. Brown and Ludgatis Complaint of "Hostile Work Environment"

In November of 2017, Plaintiffs Tamera Brown and Joy Ludgatis were police officers for the City of Cincinnati in District Four, under the supervision of then-Lieutenant Danita Pettis. (Doc. 23, pp. 2, 4, 48).

On November 26, 2017, Plaintiff Brown sent Cincinnati Police Chief Isaac a complaint regarding what she called "a disturbing display of unprofessionalism and abuse of rank" by

Defendant Pettis. (Doc. 23, p. 42). She described Defendant Pettis' behavior as "unprofessional and belligerently aggressive" and described her fear that Pettis would retaliate against her after Pettis learned that she sent an email to another Lieutenant questioning Defendant Pettis' actions on another occasion. (*Id.*) She then accused Defendant Pettis of holding a grudge and asked to be transferred out from under Defendant Pettis' supervision. (Doc. 23, p. 43). She did not allege discrimination based on sex, race, or any other protected class. She specifically attributed Pettis' treatment of her to retaliation for instigating an investigation of Pettis. (Doc. 23, p. 42).

On November 28, 2017, Plaintiff Lugatis sent a complaint to Chief Isaac as well, regarding Defendant Pettis' behavior during roll call on November 22 and 24, 2017. (Doc. 23, p. 45). She accused Defendant Pettis of "humiliating, demeaning, and unprofessional verbal abuse" and said that Pettis called her out by name for questioning her authority. (*Id.*) She specifically attributed Defendant Pettis' behavior to believing that Ludgatis had sent the email, actually sent by Brown, questioning her actions and did not allege any discrimination based on race or sex. (*Id.*) She called it a "personal tirade" that belittled her contributions because she was a desk officer. (*Id.*)

### C. Transfer of Pettis, Brown, and Ludgatis

Plaintiff Brown had asked to be transferred away from Defendant Pettis. (Doc. 23, p. 43). Plaintiff Ludgatis also stated she did not want to work under Defendant Pettis anymore, because she "did not trust her." (Doc. 23, p. 123). Defendant Pettis also requested Brown and Ludgatis be transferred until the investigation was complete. (Doc. 23, p. 50). On December 5, 2017, Lieutenant Colonel Dave Bailey requested transfer of Pettis, Brown, and Ludgatis to minimize the negative district-wide impact of "this very unfortunate chain of events" and return District Four to "peak efficiency." (Doc. 23, pp. 48-49). Defendant Pettis was transferred to

District Three, Plaintiff Brown was transferred to District One, and Plaintiff Ludgatis was

transferred to District Two. (*Id*. at p. 49). The transfers were effective December 10, 2017. (*Id*.)

Plaintiffs suffered no loss of pay as a result of the transfers. (Doc. 23, p. 9).

### D. Investigation of Pettis, Brown, and Ludgatis

Sergeant Matthew Vogeler began an Internal Investigations Section ("IIS") investigation

on November 29, 2017, which was ultimately approved by Chief Isaac on April 22, 2018. (Doc.

23, p. 51). The investigation covered Plaintiff Brown and Lugatis' complaints against Defendant

Pettis for a hostile work environment, and Defendant Pettis' complaints against Ludgatis and

Brown for insubordination and hostile work environment. (Doc. 23, p. 52). He conducted

extensive interviews and reviewed the various complaints and internal communications made

regarding the allegations. (Doc. 23, pp. 53-105). He also reviewed a digital recording of the

November 22, 2017 roll call, which had been recorded by another officer. (Doc. 23, p. 105).

He exonerated Plaintiff Ludgatis of insubordination and exonerated Ludgatis and Brown

of pressuring others to sign complaints about Defendant Pettis. (Doc. 23, pp. 105-108). He

exonerated Pettis for her actions on November 16, 2017, about which Brown complained in her

original email questioning Pettis' actions, but sustained violations against Pettis for being

discourteous at roll call, for going on the radio to talk about the investigation after being told not

to, and for not reporting to her interview for the investigation. (Doc. 23, pp. 108-113). The

Chief of Police approved his recommendations, including minor discipline (written reprimand

and ESL), for Lt. Pettis on April 22, 2018. (Doc. 23, p. 51). Sergeant Dan Hils also received

discipline, for comments he made about Defendant Pettis that were in violation of multiple rules.

(Doc. 23, p. 111-113).

### E.  Allegations of Discrimination

On March 13, 2018, Tamera Brown filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race and sex discrimination and retaliation against the Cincinnati Police Department.  (Doc. 23, p. 38).  She alleged she was subjected to a hostile work environment by Defendant Pettis and made vague statements about Defendant Pettis' "behavior toward Caucasian female Officers."  (*Id*.)  She also alleged that she was transferred after Defendant Pettis filed an "erroneous complaint" against her.  (*Id*.)  She received her right to sue letter on March 14, 2018, one day after filing her charge, with no letter of determination.  (Doc. 23, p. 39).

On March 14, 2018, Joy Ludgatis filed a charge of discrimination with the EEOC against the Cincinnati Police Department, alleging race and sex discrimination and retaliation.  (Doc. 23, p. 40).  She alleged she was "verbally attacked" and discriminated against by Defendant Pettis based on her sex and her race and transferred in retaliation.  (*Id*.)  She received her right to sue letter on March 16, 2018, two days after filing her charge, with no letter of determination.  (Doc. 23, p. 41).

Both Plaintiffs' charges were based on the November 22 and November 24 incidents with Defendant Pettis and their December transfers.  (Doc. 23, pp. 38, 40).

On May 24, 2018, Plaintiff Ludgatis sent Chief Isaac a complaint that Defendant Pettis, while not in her presence, called Ludgatis racist on April 23, 2018, and accusing Pettis of being hostile to Ludgatis because she is a white woman.  (Doc. 23, p. 123).  In her complaint, she attributed the reason for her transfer being that "I stated I did not want to work for Lt. Pettis because I did not trust her."  (*Id*.)

### F.  Speech

Plaintiffs submitted requests for permission to speak to the media about this lawsuit, but were denied.  (Doc. 23, p. 10).

### III. STANDARD OF REVIEW

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6).  *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008).  In order to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing  Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While the Court at this stage must accept well-pleaded factual allegations as true, pleadings that are "no more than conclusions… are not entitled to the assumption of truth." *Id*. at 679.  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id*.[1]

### IV. ARGUMENT

### A.  Plaintiffs Have No Standing for Injunctive Relief

Standing is the "threshold question in every federal case."  *Fieger v. Mich. Supreme Court*, 553 F.3d 955, 961 (6th Cir. 2009).  As an Article III court, this Court only has the power to resolve actual cases and controversies.  U.S. Const. art. III, § 2; *Sprint Commc'ns Co., L.P. v.*

---

[1] Defendants Pettis and the Sentinels vigorously dispute the facts alleged by Plaintiffs.  As detailed in their Answer to Plaintiffs' Second Amended Complaint (Doc. 34), Defendants Pettis and the Sentinels deny Plaintiffs' allegations and believe the allegations to be made not for the purpose of asserting cognizable legal claims, but for the purpose of continuing to slander and attack Captain Pettis' character and reputation.  While Plaintiffs claim that Defendant City of Cincinnati maintains discriminatory policies against white officers, Defendant Pettis and the Sentinels maintain that the evidence supports the opposite conclusion.  Black officers continue to experience discrimination and receive unfairly harsh discipline.  Defendant Pettis points out that of the three, she was the only one who received discipline, despite the insubordination and harassment of Plaintiffs against Defendant Pettis and their violations of police policy.

*APPCC Servs., Inc.*, 554 U.S. 269, 273 (2008). The case or controversy requirement is only satisfied if the Court can satisfy itself that the plaintiff has standing. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). Standing is evaluated based on the facts as they existed at the time the complaint was filed. *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 524 (6th Cir.2001). It is the plaintiff, not the defendant, who bears the burden of establishing standing. *Fieger* at 962.

To satisfy the constitutional standing requirements a plaintiff must show that: "(1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged act of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–181 (2000).

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Id.* at 185. See, e.g., *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (notwithstanding the fact that plaintiff had standing to pursue damages, he lacked standing to pursue injunctive relief); see also *Lewis v. Casey*, 518 U.S. 343, 358, n. 6 (1996) ("[S]tanding is not dispensed in gross."). Plaintiffs request three forms of relief, specifically injunctive relief, compensatory and punitive damages, and attorneys' fees and costs. While Defendants Pettis and the Sentinels dispute Plaintiffs' entitled to such damages, they do not dispute their standing to seek the compensatory and punitive damages and attorneys' fees and costs. However, Plaintiffs do lack standing to sue for injunctive relief.

Where, as in this case, a plaintiff seeks injunctive relief, they must demonstrate that there is a non-speculative, imminent threat of repeated injury to establish that there is an injury in fact.

7

*City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *Fieger v. Michigan Supreme Court*, 553 F.3d 955, 966 (6th Cir.2009). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974). "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to merely conjectural or hypothetical— threat of future injury." *Judy v. Pingue*, 2:08-cv-859, 2009 WL 4261389, *2 (S.D. Ohio Nov. 25, 2009), citing *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir.1994), accord *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

Plaintiffs request injunctive relief in the form of "enjoining Defendants from continuing to engage in illegal discriminatory employment practices, including termination of the herein referenced Consent Decrees." (Doc. 23, p. 19). Thus, to pursue this relief, they must have standing to do so.

To the extent that Plaintiffs allege adverse employment actions, they do not allege any harm that is present nor any possibility of future harm that is more than hypothetical. They alleged only three instances of harassment, two taking place in November of 2017, and one in April of 2018. (Doc. 23, pp. 42-45, 123). They were transferred in December of 2017. (Doc. 23, p. 49). Although they claim there is a continuing harm, this is belied by their factual allegations. The last incident occurred approximately a year and a half ago. (Doc. 23, p. 123). Having failed to identify any present adverse effects, there is thus no standing for injunctive relief regarding the employment claims.

Similarly, the request for relief in the form of the termination of the consent decrees lacks standing. The Plaintiffs allege a variety of injuries, including a hostile work environment and

retaliatory transfer. However, they make no allegation whatsoever that either Plaintiff was passed over for hiring or promotion. The consent decrees only concern hiring and promotion. (Doc. 23, pp. 20-34). It is not sufficient for a plaintiff to assert a "generalized grievance." See *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216-27 (1974). See also *Flast v. Cohen*, 392 U.S. 83, 106 (1968). A plaintiff must allege "such a personal stake in the outcome of the controversy" as to warrant his invocation of the federal court's jurisdiction. *Baker v. Carr*, 369 U.S. 186, 204 (1962). See also *Warth v. Seldin*, 422 U.S. 490, 496 (1975). The Plaintiffs have no personal stake in the constitutionality of the consent decrees. They have not alleged any harm that can be causally tied to the consent decrees, and the harmed they have alleged, hostile work environment and retaliatory transfer, would not be relieved by the termination of the decrees. Any generalized grievance the Plaintiffs have against the Consent Decrees is patently insufficient to bestow standing.

To the extent that Plaintiffs seek injunctive relief, this Court must dismiss for lack of standing.

### B. No Employment Discrimination Under Title VII

Despite the claims of the unconstitutionality of the consent decrees, Plaintiffs' complaint is actually a run of the mill employment complaint and should be treated as such. Thus, the question before this Court is whether they have experienced employment discrimination on the basis of their race, sex, or in retaliation for filing a complaint of such discrimination. Accepting all well-pled allegations as true, Plaintiffs have no claim for employment discrimination. Title VII is not a general civility code, see *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75 (1998), and while Defendant Pettis strongly disputes Plaintiffs' factual allegations, the allegations they make are at most the sort of incivility that is beyond the scope of Title VII.

### 1. No Liability Against Defendants Pettis and Sentinels for Alleged Employment Violations

Captain Pettis and the Sentinels are not liable under Title VII.  Even if Plaintiffs have sufficiently pled employment discrimination claims, "[t]he law in this Circuit is clear that a supervisor who does not otherwise qualify as an employer cannot be held personally or individually liable under Title VII."  *Little v. BP Exploration & Oil Co*., 265 F.3d 357, 362 (6th Cir. 2001), citing *Wathen v. Gen. Elec. Co*., 115 F.3d 400, 405 (6th Cir. 1997).  Title VII limits the definition of an employer to "employers with fifteen or more employees" and the Sixth Circuit determined that it was "inconceivable that a Congress concerned with protecting small employers would simultaneously allow civil liability to run against individual employees."  *Wathen*, 115 F.3d at 406, citing *Tomka v. Seiler Corp*., 66 F.3d 1295, 1314 (2d Cir.1995) (internal citations omitted).  Since Defendant Pettis was merely Plaintiffs' supervisor and not their employer, Defendant Pettis cannot be held individually liable under Title VII.  Likewise, Defendant Sentinel Police Association is not the Plaintiffs' employer and cannot be liable for any alleged employment discrimination.

### 2. Defendant Pettis Did Not Create A Hostile Work Environment

Title VII of the Civil Rights Act of 1964 prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  Plaintiffs allege they were subject to a hostile work environment by Defendant Pettis, based on sex and race.  While sexual harassment is the quintessential example of workplace harassment, a plaintiff may also advance a claim of discrimination by way of a racially hostile work environment under Title VII.  See *Risinger v. Ohio Bureau of Workers' Compensation*, 883 F.2d 475, 479 (6th Cir. 1989).

10

In general, to prevail on a hostile work environment claim, a plaintiff must show that (1) he or she was a member of a protected class; (2) he or she was subjected to unwelcome harassment; (3) the harassment complained of was based on a protected class; (4) the charged harassment created a hostile work environment; and (5) the employer is liable. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006). Thus, as a preliminary matter, Plaintiffs must allege they are members of a protected class. They identify membership in two protected classes, alleging discrimination based on their white race and their female gender. Second, they must allege that the harassment was unwelcome. Taking the alleged facts as true, the harassment described appears to be unwelcome. However, Plaintiffs' allegations do not demonstrate that the remaining elements of a hostile work environment claim have been established.

### a. Alleged Harassment was Not Based on Sex or Race

The third requirement of a hostile work environment claim is that the alleged harassment was based on the identified protected class, here, either based on Plaintiffs' white race or female gender. Title VII is not a general civility code, see *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75 (1998), and harassment not based on a protected class will not violate Title VII. Plaintiff Plaintiffs assert as a legal conclusion that the alleged harassment was based on race and sex, but this is not supported by their factual allegations. The internal investigation noted that Plaintiff Ludgatis was not the only white woman present at the time of the alleged harassment. (Doc. 23, p. 109). Brown herself attributes Defendant Pettis' actions not to race or sex, but to retaliation for Brown sending an email that questioned Pettis' decisions. (Doc. 23, p. 42). Plaintiff Ludgatis agreed. (Doc. 23, p. 45). During the investigation, Plaintiffs both admitted that they have never observed Defendant Pettis treat officers differently based on their race or gender.

(Doc. 23, pp. 58, 61). Alleged harassment that is not based on race or sex does not violate Title VII.

### b. Work Environment was Not Hostile

Fourth, to proceed on a hostile work environment theory, the Plaintiffs must allege that the environment was sufficiently hostile. This standard "takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21 (1993). A hostile work environment exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (internal citations omitted). To succeed, a plaintiff must show that the work environment was both subjectively and objectively hostile; in other words, that the plaintiff not only perceived the work environment as hostile, but that a reasonable person would have found it hostile or abusive as well. *Id*. at 21–22. The "mere utterance of an… epithet which engender offensive feelings" does not sufficiently affect the conditions of employment to implicate Title VII. *Id*. at 21.

When assessing the hostility of a work environment, courts and juries consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." *Randolph*, 453 F.3d at 733 (quoting *Harris*, 510 U.S. at 23). The Supreme Court has consistently held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

12

Plaintiffs allege only three total instances of harassment, two from November 2017 and one from April 2018.  Plaintiff Brown was present for two of the instances, on November 22 and 24, 2017.  Plaintiff Ludgatis was only present for one, on November 24, 2017.  Plaintiffs allege that the two November instances of harassment, taking place during roll call, involved behavior that was unprofessional, aggressive, humiliating, and demeaning.  However, three instances, only one to two of which Plaintiffs were present for, over a six-month period will not be sufficiently frequent or severe to be found to be hostile.  Three incidents will rarely be found to be sufficiently hostile.  See *Bowman v. Shawnee State Univ.*, 220 F.3d 456 (6th Cir.2000) (on summary judgment court found three incidents, though "not merely crude, offensive, and humiliating, but also contain[ing] an element of physical invasion" were still not sufficient to meet severe or pervasive standard); *Burnett v. Tyco Corp.*, 203 F.3d 980, 985 (6th Cir.2000) (granting summary judgment because "under the totality of the circumstances, a single battery coupled with two merely offensive remarks over a six-month period does not create an issue of material fact as to whether the conduct alleged was sufficiently severe to create a hostile work environment"); *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir.2000) (holding that simple teasing, offhand comments, and isolated incidents including a sexual advance did not amount to discriminatory changes in the terms and conditions of a plaintiff's employment as a matter of law); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 825-826 (6th Cir.1997) (overturning jury verdict to find that comments twice a week for four months was insufficient to create an objectively hostile environment); *Jackson v. SelectTech Services Corp.*, No. 3:09-cv-245, 2012 WL 252728 (S.D. Ohio Jan. 26, 2012) (dismissing hostile work environment claim as a matter of law because three instances of racial harassment not sufficiently hostile); *Reed v. Proctor & Gamble Mfg. Co.*, 556 Fed.Appx. 421 (6th Cir. 2014)

13

(affirming grant of summary judgment because three instances of harassing behavior not sufficient); *Clark v. United Parcel Service, Inc*., 400 F.3d 341 (6th Cir. 2005) (three incidents insufficient as matter of law but plaintiff who alleged ongoing pattern involving seventeen incidents was "closer case" that could not be disposed of at summary judgment).

Where courts find hostile work environments, the harassment is significantly more pervasive than what is alleged by Plaintiffs. See *Williams v. GMC,* 187 F.3d 553 (6th Cir.1999) (severe or pervasive standard met by fifteen incidents within one year including derogatory and profane remarks directed at the plaintiff, sexually explicit comments directed at the plaintiff, offensive comments directed at women in general, denial of plaintiff's overtime, and the exclusion of plaintiff from certain workplace areas); *Randolph*, 453 F.3d at 734 (daily verbal harassment, threats, and physical attacks was sufficiently severe or pervasive to alter conditions of employment); *Armstrong v. Whirlpool Corp*., 363 Fed.Appx. 317, 324-325 (6th Cir. 2010) (commonplace, ongoing, and continuous harassment was severe and pervasive where racial harassment was "an ongoing thing every day" and involved "explicit, racist, and hostile and threatening" comments).

"[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788. "To hold otherwise would risk changing Title VII into a code of workplace civility, a result we have previously rejected." *Id*. (internal quotation marks omitted). It is clear that the three incidents identified by Plaintiffs were relatively isolated. Plaintiffs have worked for the Cincinnati Police Department for fifteen and twenty-seven years and their complaints are limited to three instances over a six-month time period. Their allegations are not sufficiently severe or pervasive to establish a hostile work environment under Title VII.

### c. Employer is Not Liable

In a hostile-work-environment claim, the fifth element requires a plaintiff to demonstrate a basis for holding the employer liable for the harassing conduct of an employee's coworkers. The plaintiff must show that the employer's response to the plaintiff's complaints "manifest[ed] indifference or unreasonableness in light of the facts the employer knew or should have known." *Waldo v. Consumers Energy Co*., 726 F.3d 802, 814 (6th Cir. 2013), citing *Hawkins v. Anheuser-Busch, Inc*., 517 F.3d 321, 338 (6th Cir. 2008) (internal quotation marks omitted); see *Jackson v. Quanex Corp*., 191 F.3d 647, 659 (6th Cir.1999) (explaining that the plaintiff must show that the employer "tolerated or condoned the situation or that the employer knew or should have known of the alleged conduct and failed to take prompt remedial action" (internal quotation marks omitted)).

"Generally, a response is adequate if it is reasonably calculated to end the harassment." *Jackson*, 191 F.3d at 663. Steps that would "establish a base level of reasonably appropriate corrective action" may include promptly initiating an investigation to determine the factual basis for the complaint, "speaking with the specific individuals identified by [the complainant], following up with [the complainant] regarding whether the harassment was continuing, and reporting the harassment to others in management." *West v. Tyson Foods, Inc*., 374 Fed.Appx. 624, 633 (6th Cir.2010); see also *Collette v. Stein–Mart, Inc*., 126 Fed.Appx. 678, 686 (6th Cir.2005).

According to Plaintiffs' allegations, they complained about the harassment alleged in the complaint, and their employer responded by removing them from the allegedly harassing supervisor, as they requested, completing an extensive investigation, and disciplining the alleged harasser where they found violations. Additionally, separating Plaintiffs from Defendant Pettis

15

seems to have been successful. Since the transfer, there has been only one alleged instance of challenged conduct, and neither of Plaintiffs were present for it. (Doc. 23, p. 123). These facts do not manifest indifference or unreasonableness on the part of the employer and shows in fact that their employer does not tolerate harassment and will take prompt and effective remedial action to such complaints. Under these facts, there is no employer liability and Plaintiffs' claim of hostile work environment must be dismissed.

### 3. No Retaliatory Transfer

To establish a prima facie case of retaliation a plaintiff must establish that: (1) she engaged in a protected activity; (2) her "exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quoting *Jones v. Johanns*, 264 Fed.Appx. 463, 466 (6th Cir. 2007)). If a plaintiff succeeds in making out the elements of a prima facie case, "the burden of production of evidence shifts to the employer to articulate some legitimate, non-discriminatory reason for its actions. If the defendant satisfies its burden of production, the burden shifts back" to plaintiff to demonstrate that defendants' proffered reason was not the true reason for the employment decision. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (quotation marks and citations omitted). "Although the burden of production shifts between the parties, the plaintiff bears the burden of persuasion through the process." *Id*.

### a. Plaintiffs Did Not Engage in Protected Activity Until March 2018

Title VII protects two types of activities: 1) opposition to an employment practice made unlawful by Title VII, and 2) making a charge or participating in a Title VII investigation or

proceeding.  42 U.S.C. § 2000e-3.  Plaintiffs' complaints regarding Defendant Pettis' behavior in

November 2017 were not protected activity.  These complaints were not part of a Title VII

investigation or proceeding, but were complaints made to their employer.  (Doc. 23, p. 42-45).

The "opposition clause protects not only the filing of formal discrimination charges with the

EEOC, but also complaints to management and less formal protests of discriminatory

employment practices."  *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir.2014).

However, the employment practices they were opposing were not unlawful under Title VII.

Their complaints alleged abusing and harassing behavior, but made no statements that they were

discriminatory or were based on sex or race.  (Doc. 23, pp. 42-45).  In fact, they do purport to

identify the reason for the abuse and harassment, specifically that Defendant Pettis was holding a

personal grudge against the Plaintiffs for questioning her decision-making.  (Doc. 23, pp. 42, 45).

Although she vigorously denies these allegations, this is not unlawful under Title VII and thus

their complaints are not protected activity.

However, Plaintiffs did engage in protected activity under the participation clause when

the filed EEOC charges in March 2018.  (Doc. 23, pp. 38-41).

### b.  Transfer Was Not Materially Adverse

An adverse employment action is a "materially adverse change in the terms or conditions

of ... employment because of [the] employer's conduct."  *Kocsis v. Multi–Care Mgmt., Inc.*, 97

F.3d 876, 885 (6th Cir.1996) (emphasis omitted).  Reassignments without changes in salary,

benefits, title, or work hours usually do not constitute adverse employment actions.  *Id.* at 885,

886; *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir.1987).  Plaintiffs alleged that they were

transferred, but do not make any allegations sufficient to show that the transfers were adverse.

They specifically admit that the transfer "did not result in any loss of pay" but they nonetheless

17

assert that "it was a material change in the terms, conditions, and privileges of Plaintiffs' employment." This conclusory allegation is unsupported by any alleged facts and is not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Twombly*, 550 U.S. at 57.

The purpose of Title VII's anti-retaliation provisions is to prohibit "employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers," and "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Thus, the real question is always whether the action taken by the employer would deter someone from making a complaint. There is no factual basis in any of the allegations that would support finding that the transfers were adverse actions. Plaintiff Brown requested a transfer away from Defendant Pettis in her complaint. (Doc. 23, p. 43). Plaintiff Ludgatis also desired a transfer. (Doc. 23, p. 123, ("the reason for my transfer was because I stated I did not want to work for Lt. Pettis because I did not trust her.")). Plaintiffs attempt to reframe their transfers after the fact as adverse under Title VII is unsupported by the facts.

### c. There is No Causal Connection Between the March 2018 Protected Activity and the December 2017 Transfer

Plaintiffs did not engage in activity protected by Title VII when they complained about Defendant Pettis' unprofessional behavior, as explained in Section IV(B)(3)(a). They did engage in protected activity when they filed charges of discrimination with the EEOC. However, their March 2018 EEOC charges cannot be causally connected to their transfers, which went through months *before* the protected activity. They were transferred on December 10, 2017, (Doc. 23, p. 49), and their protected activity did not occur until March the following year. (Doc. 23, p. 38-41). Thus, the transfer cannot be retaliation for protected activity that had not yet occurred.

18

### d. Defendants Had Legitimate Non-Retaliatory Reason for Transfer and Plaintiffs have Presented No Allegations of Pretext

Where there is a legitimate non-retaliatory reason, the burden shifts back to Plaintiffs to show that the reason was mere pretext for retaliation. *Dixon*, 481 F.3d at 333. It is clear that Lieutenant Colonel Bailey had concerns about the "confrontational environment" in District Four and the need for District Four to "recover and resume operations at peak efficiency." (Doc. 23, pp. 48-49). Additionally, this reasoning is supported by the choice to transfer Brown, Ludgatis, and Pettis, not just Brown and Ludgatis. (*Id*.) This is a legitimate, non-retaliatory reason for the transfers. Additionally, Brown and Ludgatis requested transfer away from Pettis as the solution to the harassment they complained of. (Doc. 23, pp. 43, 123). The transfer was not only at the request of the Plaintiffs, but successfully resolved Plaintiffs' concerns. This is a legitimate non-retaliatory reason for the transfers. There are no allegations that any of these reasons was a pretext for retaliation.

Plaintiffs are unable to make out a prima facie case of retaliatory transfer. They did not engage in protected activity prior to transfer, the transfer was not adverse and was, in fact, requested by Plaintiffs, and there could be no causal connection between the protected activity that had not occurred yet when they were transferred. Additionally, Plaintiffs' employer had legitimate, non-retaliatory reasons for the transfer, and Plaintiffs have not alleged that those reasons were pretextual. Plaintiffs' retaliatory transfer claim must be dismissed.

### C. No Employment Discrimination Under Other Federal or State Law

Plaintiffs also raise employment claims under 42 U.S.C. § 1981, which prohibits race discrimination in making and enforcing contracts, including employment contracts. *Aquino v. Honda of Am., Inc*., 158 F. App'x 667, 673 n.3 (6th Cir. 2005); see also *Williams v. United Dairy Farmers*, 20 F. Supp. 2d 1193, 1202 (S.D. Ohio 1998) (same). "The elements of [a] prima facie

19

case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and § 1981." *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) (alteration in original) (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 n.5 (6th Cir. 2000)). Thus, Plaintiffs' claims under § 1981 fail for the same reasons as their Title VII claims.

Plaintiffs also raise claims for unlawful discriminatory practices under O.R.C. 4112.02, however the state-law claims "rise or fall on the resolution of the federal claims." *Hostettler v. College of Wooster*, 895 F.3d 844, 848 n. 1, citing *Braun v. Ultimate Jetcharters*, LLC, 828 F.3d 501, 510 (6th Cir. 2016) (analyzing Chapter 4112 under Title VII); *Rorrer v. City of Stow*, 743 F.3d 1025, 1031 n.1 (6th Cir. 2014) (analyzing Chapter 4112 under the ADA). Thus, we do not address the state-law claims individually.

**D. No First Amendment Violation**

To state a claim under 42 U.S.C. § 1983, a plaintiff must plead facts that show the defendant acted under color of state law and that the conduct deprived the plaintiff of a federal constitutional or statutory right. *Graham v. National Collegiate Athletic Ass'n*, 804 F.2d 953, 957 (6th Cir. 1986) (citation omitted). Defendant Sentinel Police Association was not alleged to be a state actor, is not a state actor, and is not liable under § 1983 for any violations of the constitution alleged by Plaintiffs. *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000) (holding that "[i]t is undisputed … that a private entity… cannot deprive a citizen of First Amendment rights."). The organization is sued only as a "necessary party," (Doc. 23, p. 4), presumably because it is a party to the state court consent decree. As stated above, the Plaintiffs do not have standing to challenge either of the decrees. There is no claim stated against the Sentinels.

20

Defendant Pettis is a state actor, and as such, is protected by qualified immunity.  Under this doctrine, she is immune from civil liability under 42 U.S.C. § 1983 when performing discretionary duties if her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Simmonds v. Genesee Cty.*, 682 F.3d 438, 443-44 (6th Cir. 2012), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The doctrine balances the need to hold public officials accountable with "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Once a defendant asserts qualified immunity, the burden rests with the plaintiff to prove the defendant is not entitled to qualified immunity.  See, e.g., *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).  The plaintiff must show: (1) a defendant violated a constitutional right and, (2) the right was clearly established.  See *Saucier v. Katz*, 533 U.S. 194, 200 (2001), overruled in part on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009).  Courts are free to choose which of the two inquiries to pursue first.  *Pearson* at 236.

Defendant Pettis did not violate any clearly established rights.  Plaintiffs allege two violations, 1) denying the Plaintiffs' request to speak to the media about the lawsuit, and 2) "adverse employment decisions" in retaliation for Plaintiff's "protected speech and conduct on matters of public concern."  (Doc. 23, p. 17.)  Plaintiffs make no allegation that Defendant Pettis was in any way involved in denying the media request.  In fact, Plaintiffs' allegation includes the fact that Defendant Pettis herself was disciplined for speaking to the media about the investigation.  (Doc. 23, p. 111).

As to the alleged retaliation, Section IV(B)(3)(b) demonstrates that no adverse action was taken.  The transfer was not adverse, as it did not material affect the terms, conditions, and

privileges of employment, and was, in fact, requested by Plaintiff Brown.  (Doc. 23, p. 43).  It was also desired by Plaintiff Ludgatis, who "did not want to work for Lt. Pettis because [she] did not trust her."  (Doc. 23, p. 123).  It was also an appropriate and justified response to the turmoil in District Four and to any ongoing concerns of harassment during the investigation into that alleged harassment.  (Doc. 23, pp. 48-50).

The only remaining consideration is whether Defendant Pettis retaliated against Plaintiff Brown based on her protected speech during roll call on November 22 and 24, 2017.  The only possible claim would be held by Plaintiff Brown, who expressed disagreement to a fellow officer concerning Defendant Pettis' management decision-making.  (Doc. 23, pp. 42, 60).  Plaintiff Ludgatis did not engage in any speech until November 28, 2017 at the earliest.  (Doc. 23, p. 45). Thus, the comments during roll call on the 22nd and 24th were not retaliation for any speech made by Plaintiff Ludgatis.

Plaintiffs Brown and Ludgatis both believe that Defendant Pettis' statements during roll call were in response to Plaintiff Brown's discussion with Lieutenant Ruehmer and his resulting email.  (Doc. 23, pp. 42, 45).  However, the fact that there was a response to Plaintiff Brown's speech does not mean that her free speech rights were violated.

In *Pickering v. Board of Education*, 391 U.S. 563 (1968), the Supreme Court stated that a public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment.  However, they recognized that the State's interests as an employer in regulating the speech of its employees "differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general."  *Id.*, at 568. This requires "a balance between the interests of the [employee], as a citizen, in commenting

upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.*

The extent of Plaintiff Brown's free speech protection is based on the degree to which she, as an employee, speaks regarding a public concern, or speaks regarding a private interest. *Connick v. Myers*, 461 U.S. 138, 142 (1983); *Dambrot v. Central Michigan University*, 55 F.3d 1177, 1187 (6th Cir. 1995). The threshold inquiry is whether the employee is speaking as a citizen and whether the topic was a matter of public concern. *Id.* Because Plaintiff Brown was not speaking on a matter of public concern and was not speaking as a citizen, her speech was not protected. Additionally, any interest she had in expressing herself was outweighed by her employer's interests in maintaining discipline.

Plaintiff Brown was not speaking on a matter of public concern. Plaintiff Brown expressed concerns about Defendant Pettis' actions during a November 16, 2017 roll call to Lieutenant Ruehmer "to ask for guidance on what could be done" about Defendant Pettis' behavior. (Doc. 23, p. 60). In response, he is believed to have sent an email to Command Staff and to have triggered the IIS investigation into Defendant Pettis' conduct. (*Id.*) Plaintiff Brown's questioning of Defendant Pettis' decision-making on November 16, 2017 is not a matter of public concern receiving constitutional protection. "[M]ere assertions of incompetence and poor management decision-making [are] run-of-the-mill employment disputes" rather than matters of public concern. *Boulton v. Swanson*, 795 F.3d 526, 532 (6th Cir. 2015).

Additionally, she was not speaking as a citizen but as a private employee. There are no allegations to support the assertion that Plaintiff Brown was speaking as a citizen when she spoke privately to Lieutenant Ruehmer. Her later complaint indicates that she had not intended the discussion to go further than Lieutenant Ruehmer. (Doc. 23, p. 42). It appears to have been

23

a surprise that he sent the email and her private conversation triggered an investigation. (*Id.*) It is clear she was not speaking as a citizen at the time.

Finally, this must be balanced with Defendant City's interest as an employer. The police department has obvious concerns and significant interest in its officers following the proper chain of command and that is an interest that is absolutely necessary to its ability to "promot[e] the efficiency of the public services it performs through its employees." *Connick*, 461 U.S. at 140. Disputes between Defendant Pettis and the officers under her command over the proper course of action are not a matter of public concern and the need to maintain the chain of command weighs heavily in favor of the interest of the State and against Plaintiff Brown's interest in expressing herself.

Plaintiff Brown was not speaking as a citizen, on a matter of public concern, and Defendant Pettis' lecture during roll call about proper chain of command was not a violation of Brown's free speech. Defendant Pettis certainly did not violate any clearly established law by doing so. She was reasonably performing the duties of her position and is entitled to qualified immunity. This Court should dismiss Plaintiffs' free speech claim.

**V. CONCLUSION**

For the foregoing reasons, the City Defendants respectfully request that the Court grant their Rule 12(C) motion for judgment on the pleadings and dismiss all claims. All claims against them should be dismissed in its entirety as a matter of law.

Respectfully submitted,

*s/ Alphonse A. Gerhardstein*
Alphonse A. Gerhardstein (0032053)
Gerhardstein and Branch Co. LPA
441 Vine Street, Suite 3400
Cincinnati, Ohio 45202
(513) 621-9100 / fax (513) 345-5543

24

agerhardstein@gbfirm.com
*Trial Attorneys for Defendants Sentinel Police Association and Lieutenant Pettis in her Individual Capacity*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and accurate copy of the foregoing document was filed electronically on October 14, 2019 with the Clerk of Courts via the CM/ECF system.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

s/ Alphonse A. Gerhardstein
Alphonse A. Gerhardstein