# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| Tamera Brown, et al., | : | Case No. 1:18cv412 |
| Plaintiffs, | : | Judge Dlott |
| | | Magistrate Judge Litkovitz |
| | : | |
| v. | : | **RULE 12(c) MOTION OF CITY DEFENDANTS** |
| City of Cincinnati, et al., | | |
| | : | |
| Defendants. | | |

Upon the attached memorandum and all prior pleadings herein, Defendants City of Cincinnati ("the City"), Mayor Cranley, Captain Pettis, Mr. Duhaney, Mr. Black, and Chief Isaac (collectively, "the City Defendants") hereby move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). All claims should be dismissed as a matter of law.

Respectfully submitted,

**PAULA BOGGS MUETHING (0080018)**
**CITY SOLICITOR**
*/s/ Shuva J. Paul*
Shuva J. Paul (0088484)
Emily Smart Woerner (0089349)
Peter J. Stackpole (0072103)
801 Plum Street, Suite 214
Cincinnati, Ohio 45202
(513) 352-4551
shuva.paul@cincinnati-oh.gov
*Trial Attorneys for Defendants*

## MEMORANDUM IN SUPPORT

**I.  SUMMARY**

This case concerns a set of grievances wheeled into court on the wrong vehicles from the start.  The two plaintiff police officers in this action assert they were subjected to discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Ohio Revised Code Chapter 4112, as well as deprived of their free speech rights, but after obtaining leave to amend their pleadings twice, their contentions still do not state cognizable claims.  For the reasons set forth herein, their claims should be dismissed as a matter of law.

Defendants City of Cincinnati, John Cranley, Danita Pettis, Patrick A. Duhaney, Harry Black, and Eliot K. Isaac (collectively, "the City Defendants")[1] submit this motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  As an initial matter, Plaintiffs failed to exhaust administrative remedies prior to bringing their Title VII claims.  Second, Plaintiffs fail to allege facts sufficient to support a Title VII hostile work environment claim.  Third, Plaintiffs fail to allege sufficient facts for their Title VII retaliation claim.  Fourth, qualified immunity bars Plaintiffs' constitutional claims.  Fifth, Plaintiffs fail to allege sufficient facts to advance any constitutional claim.  Finally, their claims under R.C. 4112 fail as a matter of law.

**II.  STATEMENT OF FACTS**

Tamera Brown and Joy Ludgatis are Cincinnati police officers.[2]  (Doc. 23, PageID 298, ¶¶ 1-2).  In November 2017, Brown and Ludgatis were both assigned to District

---

[1] In this action, Captain Pettis (formerly Lieutenant Pettis) is represented in her individual capacity by additional counsel of record.

[2] This Statement of Facts draw from allegations contained in the Second Amended Complaint (Doc. 23), reflecting the obligation on a Rule 12(c) motion to accept as true all well-pleaded factual allegations and to

Four along with Danita Pettis, who at that time held the rank of lieutenant. (Doc. 23, PageID 303-305, ¶¶ 32, 41, 44, 47.) During that month, there were a number of occurrences that resulted in an internal investigation, starting with a "shots-fired" incident on November 16, 2017. (Doc. 23, PageID 304, ¶ 41).

### A. Shots Fired

#### 1. Brown's Alleged Protected Activity

Brown was assigned to the third shift at District 4 on November 16, 2017. (Doc. 23, PageID 338, Exh. 6 ("Brown Memo Dated November 26, 2017 to Chief Isaac")). On that night, while third-shift officers were attending roll call, Brown became "personally disturbed" that Pettis did not release the third-shift officers to respond to an incident involving shots fired at a location where second-shift officers had responded. (Id.). Brown believed that Pettis was wrong in "stating she didn't believe the officers were shot at." (Id.). Brown's concerns about Pettis' actions extended into a roll call Pettis conducted eight days after the incident on November 24, 2017, at which Pettis emphasized her position as relief commander and, as Brown herself described it in her internal complaint, displayed "unprofessionalism," a "belligerently aggressive manner," and an "abuse of rank." (Id.). Brown took offense at how Pettis spoke about Ludgatis' "questioning her authority" at that roll call (at which Ludgatis was not present). (Id.).

Brown filed her internal complaint ten days after the shots-fired incident. (Doc. 23, PageID 304, ¶ 40; PageID 338, Exh. 6). In that complaint, Brown expressed her "fear" that Pettis would "hold onto a grudge." (Id.). Nowhere in her complaint did Brown contend that race or sex was a factor in any of the complained-of conduct. (Id.).

---

draw all reasonable inferences in favor of the plaintiff. This factual summary is intended to assist the Court and does not concede the truth of any of the Complaint's allegations.

Brown concluded her complaint by stating she had "no wish to be the future focus of [Pettis'] ire" and requesting "to be removed from under Lt. Pettis' supervision." (Id.).

### 2. Ludgatis' Alleged Protected Activity

Twelve days after the shots-fired incident, and two days after Brown filed her internal complaint, Ludgatis filed her own internal complaint. (Doc. 23, PageID 304, ¶ 44; PageID 341, Exh. 8 ("Ludgatis Memo Dated November 28, 2017 to Chief Isaac"). Ludgatis alleges that Pettis directed a "hostile verbal assault" at her in front of other third-shift officers during a roll call on November 22, 2017. (Doc. 23, PageID 341). Ludgatis alleges that Pettis "wrongly assumed" that it was Ludgatis and not Brown who was coordinating a challenge to Pettis' handling of the shots-fired incident, and that Pettis had been "insinuating" that Ludgatis, being the desk officer at District Four, would not "risk her personal safety" for her fellow officers. (Id.). Ludgatis also alleges that Pettis engaged in an "authoritarian rant" at a roll call held on November 24, 2017. (Id.). Nowhere in her complaint did Ludgatis contend that race or sex was a factor in any of the complained-of conduct. (Id.).

**B. The Initiation of the Internal Investigation and Resulting Transfers**

On December 5, 2017, Executive Assistant Chief David Bailey informed Chief Isaac that the Internal Investigations Section (IIS) had commenced an inquiry into the shots-fired incident and into the complaints made by Brown and Ludgatis as well as by Pettis. (Doc. 23, PageID 305, ¶ 46; see also PageID 344, Exh. 10 ("Bailey Memo Dated Dec. 5, 2017 to Chief Isaac"). As Bailey described it:

> The incident stems "from a decision made by Lieutenant Pettis relative to a firearms discharge situation [] on November 16, 2017. Based on the information received to date by CPD Administration, that decision received significant and vocalized dissent from several third shift officers. In particular, Police Officers Joy Ludgatis and Tamera Brown expressed

> extreme dissatisfaction with Lt. Pettis's decision and made numerous negative remarks about Lt. Pettis to other CPD staff on that topic.

(Doc. 23, PageID 344). Among other things, Bailey took note of the dangers apparent to "the entire district operation" arising from the "current confrontational environment":

> Due to the negative district-wide impact from this very unfortunate chain of events, it is clear that the potential negative consequences of this current confrontational environment must be minimized and any future incidents of this nature must be prevented. In the meantime, District Four must have the opportunity to recover and resume operations at peak efficiency. This can only occur if the three principal parties are transferred out of District Four and separated. It is therefore my recommendation that Lieutenant Danita Pettis, and Police Officers Joy Ludgatis and Tamera Brown be transferred to new assignments immediately, even while the remainder of the Internal Investigation proceeds.

(Doc. 23, PageID 344-345).

On December 5, 207, Chief Isaac approved the requested transfers of Brown, Ludgatis, and Pettis from District Four to other Cincinnati Police Department districts with no loss in pay. (Doc. 23, PageID 305, ¶¶ 48-49; PageID 345). Plaintiffs do not allege that any loss of rank or benefits accompanied these transfers.

### C. The Key Conclusions of the IIS Investigation

1. <u>Pettis' Handling of the Shots-Fired Incident</u>

Brown and Ludgatis include the final Internal Investigations Section report approved by Chief Isaac on April 22, 2018 in their pleadings. (Doc. 23, PageID 347-418 ("IIS Report, Case No. 17160"). Besides Pettis, Brown, and Ludgatis, IIS investigators interviewed thirty-two persons including CPD personnel and others. As to Pettis' handling of the shots-fired incident, IIS recommended that this portion of the investigation be closed and that Pettis be exonerated in connection therewith. (Doc. 23, PageID 404). The IIS report noted that no "officer needs assistance" call had been broadcasted, and furthermore, that there had been uncertainty as to whether an officer

was being shot at versus whether an officer had heard a shot. (Doc. 23, PageID 404). IIS further noted that it was not until the arrival on scene of a canine unit that it became apparent that one or more officers had been shot at. (Doc. 23, PageID 404). Thereupon, IIS noted, Pettis advised dispatchers "to implement situational notifications." (Doc. 23, PageID 404).

### 2. Pettis' Treatment of Ludgatis at Roll Call

Even though Brown and Ludgatis did not raise race or sex in their internal complaints, IIS investigated whether either played a role, concluding that neither did:

> IIS reviewed lineups for District Four third relief, which show that Specialist Ludgatis is not the only white female assigned to the relief, and was not the only white female present for roll call on November 22, 2017.

(Doc. 23, PageID 405).

IIS noted Ludgatis' statement that "she was singled out by Lieutenant Pettis because of the history between the two of them, stemming from a complaint filed by Lieutenant Pettis against Specialist Ludgatis in February 2015." (Doc. 23, PageID 405). IIS also noted that "Specialist Ludgatis has never observed Lieutenant Pettis treat officers differently based upon their race or gender, and prior to November 22, 2017 they had no issues and were professional towards each other while assigned to District Four." (Doc. 23, PageID 406). IIS further noted that it had interviewed four sergeants and twenty-three officers assigned to District Four third relief under the supervision of Lieutenant Pettis, and that "[n]one of the sergeants or officers observed Lieutenant Pettis treat officers differently based upon their race or gender." (Doc. 23, PageID 406).

### D. Plaintiffs' Other Allegations

Despite the IIS investigation and resulting IIS report, Brown and Ludgatis allege in their pleadings in this action that "the City has failed to impose meaningful discipline

or otherwise address the continuing racial tensions and hostile environment created by Pettis." (Doc. 23, PageID 305, ¶ 50). Ludgatis also alleges that on May 23, 2018 (after she filed her EEOC charge of discrimination), Pettis made "disparaging remarks" about her at an Fraternal Order of Police meeting (not at the workplace) concerning a reprimand Ludgatis received in 2015 for "racist" conduct towards Pettis later reversed through the peer review process. (Doc. 23, PageID 306, ¶ 52; Page ID 419, Exh. 13 ("Ludgatis Memo Dated May 24, 2018 to Chief Isaac").

Brown and Ludgatis also allege that the City maintains "double standards" for disciplining officers based on their race. (Doc. 23, PageID 306-307, ¶¶ 23, 61-62). They allege that the City maintains "race-based policies for hiring, promotion, discipline, and conferring benefits of employment among and upon the ranks of the Cincinnati Police Department," starting with the consent decrees that they contend "predicate promotions among qualified candidates based solely and exclusively on racial criteria." (Doc. 23, PageID 301, ¶¶ 18-19). Brown and Ludgatis do not allege they ever sought promotions.

As to the purported racially-determined "benefits of employment," Brown and Ludgatis allege these to include "preferred detail assignments" handed out to officers "based solely on their race." (Doc. 23, PageID 301-302, ¶ 24.) Brown and Ludgatis do not allege they ever sought or were denied such assignments. Brown and Ludgatis further allege the existence of "an unconstitutional race-based policy," "permitting black officers to speak with media outlets and exercise their First Amendment rights while denying the same to white officers." (Doc. 23, PageID 302, ¶ 25). Brown and Ludgatis do not allege facts showing the application of such a policy in this "race-based" manner.

### E. Plaintiffs' EEOC Charges of Discrimination

In their pleadings, Brown and Ludgatis attach copies of the EEOC Charge of Discrimination each of them filed within one day of each other in March 2018 (Brown on March 13, 2018, Ludgatis on March 14, 2018). (Doc. 23, PageID 303-304, ¶ 37; PageID 334-337, Exhs. 4, 5). Brown's Charge of Discrimination (No. 473-2018-00623) and Ludgatis' Charge of Discrimination (No. 473-2018-00622) are virtually identical in substance. Both asserted race and sex discrimination by Pettis and retaliatory transfers by "[m]anagement" after they filed their internal complaints after the shots-fired incident (described in Section A above). (Doc. 23, PageID 334-335, Exh. 4). The EEOC charges contain no other allegations of race or sex discrimination or retaliatory activity.

### F. Plaintiffs' Claims and Requested Relief

In their federal lawsuit, Plaintiffs allege illegal employment discrimination and retaliation based on race and sex under Title VII, specifically making a hostile work environment claim. They further allege Section 1983 violations of their free speech rights in connection with their desire to speak to the news media about the shots-fired incident, and their belief that a race-based double standard exists in how officer requests to speak to media are treated. Plaintiffs also seek to challenge consent decrees governing promotion. Lastly, they seek to bring a R.C. 4112 claim, alleging illegal employment discrimination based on race and sex. For the reasons set forth below, their claims fail at the pleadings stage.

### III. STANDARD OF REVIEW

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). In order to survive a

motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Twombly*, 550 U.S. at 570. Where a complaint "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678, *citing Twombly*, 550 U.S. at 557 (internal citations omitted).

## IV. ARGUMENT

### A. Failure to Exhaust Administrative Remedies

Bringing suit under Title VII requires plaintiffs to first exhaust their administrative remedies. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 379 (6th Cir. 2002). There are several ways in which plaintiffs may fail to exhaust their administrative remedies. Here, Plaintiffs failed to meet the administrative prerequisites in two ways. Not only did they fail to file their EEOC charges in a timely fashion (300 days) for some of their claims, but most of the allegations in their pleadings were not included in or were beyond the scope of their claims before the EEOC.

#### 1. Plaintiffs Failed to File Within 300 Days

To the extent that Brown and Ludgatis seek relief under Title VII in connection with any incidents prior to the shots-fired incident, they must abide by the timeliness requirements set forth in the statutory language of Title VII. *See Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999), cert. denied, 528 U.S. 1154 (2000). Under 29 U.S.C. § 626(d)(2), in a deferral state such as Ohio, if a plaintiff does not file a charge with the EEOC within 300 days of an alleged discriminatory act, then any claims arising from that act must be dismissed as untimely. *See, e.g., Amini v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001) ("The alleged

unlawful employment practice in this case did occur in Ohio, a deferral state, and thus the 300-day period in which to file an EEOC charge under Title VII applies.").

Brown and Ludgatis filed their EEOC Charges of Discrimination on March 13, 2018 and March 14, 2018 respectively. To the extent Brown alleges unlawful employment practices occurring before May 17, 2017, those claims are untimely. To the extent that Ludgatis alleges unlawful employment practices occurring before May 18, 2017, those claims are untimely. In addition, as the next section describes, most of the allegations in the Second Amended Complaint were not even included in or are beyond the scope of the plaintiffs' EEOC charges and cannot be reviewed here.

### 2. Plaintiffs Made Claims Beyond the Scope of their EEOC Charges

The Sixth Circuit has held that "the general rule in this circuit … is that the judicial complaint must be limited to the scope of the EEOC investigation or reasonably expected to grow out of the charge of discrimination." *Weigel* at 380. The only factual allegations that are included in both the EEOC charges and the Second Amended Complaint concern Brown and Ludgatis' internal complaints following the shots-fired incident in November 2017 and their transfers with no loss of pay in December 2017.

As to the sprawl of other allegations included in the Second Amended Complaint, they are beyond the scope of the EEOC charges and should not be reviewed for the first time here. *See Golden v. Mirabile Inv. Corp.*, 724 Fed. Appx. 441, 445 (6th Cir. 2018) (holding that a "generic" charge of race and sex-based discrimination related to plaintiff's termination would not prompt the EEOC to investigate claims based on promotions, raises, leave or job duties). Here, Brown and Ludgatis filed EEOC charges related to *transfers* following their complaints about a shots-fired incident. Thus, their

claims concerning anything except defendants' conduct related to those transfers are beyond the scope of the EEOC charges and should not be reviewed here.

### B. No Title VII Hostile Work Environment

Once timely claims within the scope of EEOC charges are identified, they are analyzed under well-established precedent, and here the analysis is fatal to Brown and Ludgatis' Title VII hostile work environment claims. An employee asserting a violation of Title VII based upon a hostile work environment "must establish that (1) she was a member of a protected group, (2) she was subjected to unwelcome harassment, (3) the harassment was based upon the employee's protected status, such as race or gender, (4) the harassment affected a term, condition, or privilege of employment, and (5) the defendant knew or should have known about the harassing conduct but failed to take any corrective or preventive actions." *Howard v. Bd. of Educ.*, 70 Fed. Appx. 272, 281, 2003 U.S. App. LEXIS 13512, *22-23, citing *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560-61 (6th Cir. 1999) (discussing the requirements for proving a hostile work environment claim based upon gender). As set forth below, not only was Pettis' complained-of conduct not based on any protected status, but it did not rise to the level of conduct actionable under Title VII and it furthermore did not affect a term, condition, or privilege of Brown or Ludgatis' employment within the meaning of Title VII.

### 1. The Individual Defendants Are Not Amenable to Suit

Under long-standing precedent none of the individuals named in this action—Mayor Cranley, Captain Pettis, Mr. Duhaney, Mr. Black, or Chief Isaac—can be held personally liable under Title VII. *See Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999). Therefore, Plaintiffs' individual capacity claims should be dismissed.

## 2. The Complained-of Conduct Was Not Based on Race or Sex

Plaintiffs complain of a "hostile work environment" they attribute to Pettis, but their pleadings set forth no facts showing a hostile work environment within the meaning of Title VII. On the contrary, the attachments to their pleadings make plain that Pettis' treatment of Brown and Ludgatis was *not* based on race or sex according to how Brown and Ludgatis themselves described it in their internal complaints that they now attach to their pleadings. (Doc. 23, PageID 338-339, Exh. 6; PageID 341, Exh. 8). An "abuse of rank" was how Brown herself put it. (Doc. 23, PageID 338).

As for Ludgatis, her pleadings include her statement to IIS investigators that she "has never observed Lieutenant Pettis treat officers differently based upon their race or gender, and prior to November 22, 2017 they had no issues and were professional towards each other while assigned to District Four." (Doc. 23, PageID 406). IIS further noted that it had interviewed four sergeants and twenty-three officers assigned to District Four third relief under the supervision of Lieutenant Pettis, and that "[n]one of the sergeants or officers observed Lieutenant Pettis treat officers differently based upon their race or gender." (Doc. 23, PageID 406). Brown and Ludgatis' hostile work environment claims warrant dismissal as a matter of law.

## 3. Nothing Severe or Pervasive or Even Objectively Offensive

Brown and Ludgatis not only fail to allege harassment based on protected status, but the harassment they allege is not sufficiently severe or pervasive to advance a Title VII claim. A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations

and citations omitted). Being personally disturbed by a superior officer's verbally aggressive manner at roll call does not rise to the level of an actionable claim. *See, e.g., Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (noting a "bruised ego" is insufficient to constitute an adverse employment action); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-271 (2001) ("No reasonable person could have believed that the single incident recounted above violated Title VII's standard.").

Brown and Ludgatis have a combined 42 years of service between them. (Doc. 23, PageID 298, ¶¶ 1, 2). They are aware of the paramilitary nature of police departments and the way decisions are made within the chain of command in police departments. Certainly the Court may take judicial notice that the Cincinnati Police Department, being a municipal police department, is a highly centralized and formally organized body with a chain of command recognized by its sworn members. The nature of such organizations limits participatory decision-making from officers at the bottom of the hierarchy—whether that decision-making is done in the context of a shots-fired incident or in the context of some other situation facing relief commanders. Similarly, comments made to rank-and-file police officers by their superior officers, whether during roll call or elsewhere, typically must be viewed within a culture of rigid discipline not seen in other types of organizations that are more suited to participatory decision-making from staff at all levels. Brown and Ludgatis' allegations of a hostile work environment are simply insufficient to state a claim.

    4.   The Alleged Harassment Did Not Affect a Term, Condition, or Privilege of Employment.

An adverse employment action is an action by the employer that "constitutes a significant change in employment status, such as hiring, firing, failing to promote,

reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Lindsey v. Whirlpool Corp.*, 295 Fed. Appx. 758, 767-768 (6th Cir. 2008). Here, Brown and Ludgatis aver they suffered no loss in pay. (Doc. 23, PageID 305, ¶ 49). They moreover allege no loss in benefits or rank. Their allegations are insufficient to show a materially adverse employment action. *See Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999) (citations omitted) (noting that a materially adverse change in the terms and conditions of employment "must be more disruptive than a mere inconvenience or an alteration of job responsibilities.").

### C. No Title VII Retaliation

To establish a prima facie case of Title VII retaliation, a plaintiff must show that "(1) she engaged in activity protected under Title VII; (2) the defendant knew that she engaged in protected activity; (3) the defendant subsequently took an adverse, retaliatory action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) the protected activity and the adverse action were causally connected." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 736 (6th Cir. 2006).

Furthermore, employer retaliation is prohibited only where allegations of discrimination have an objectively reasonable basis in fact. *Clark v. Breeden*, 532 U.S. 268, 271 (2001). *See also Weeks v. Harden Mfg. Corp.,* 291 F.3d 1307, 1312 (11th Cir. 2002) ("A plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented.").

Here, the EEOC complaints filed by Brown and Ludgatis were filed *after* the December 2017 transfers of Pettis, Brown, and Ludgatis. Brown and Ludgatis fail to

allege any facts that they engaged in protected activity *before* the transfers, and therefore fail to state a retaliation claim. Furthermore, Brown nor Ludgatis' allegations of discrimination are not objectively reasonable for the reasons set forth above.

Furthermore, the applicable standard requires Brown and Ludgatis not only to allege facts that they engaged in protected activity *before* their complained-of transfers, but to allege facts showing that the defendants *knew or were aware* of such purported protected activity. *See Mulhall v. Ashcroft*, 287 F.3d 543, 551 (6th Cir. 2002). This they fail to do as well. Their retaliation claims should be dismissed as a matter of law.

1. The City Is Entitled to the *Ellerth-Faragher* Defense

The plaintiffs in this action allege no prima facie case of an unlawful employment practice. Accordingly, the City Defendants are entitled to the *Ellerth-Faragher* defense. *See Francis v. Davis H. Elliot Constr. Co.*, No. 3:12-cv-87, 2013 U.S. Dist. LEXIS 33310, *31-37 (S.D. Ohio 2013). In her internal complaint, Brown specifically requested to be transferred. (Doc. 23, PageID 338, Exh. 6). Not only was her request granted, but CPD leadership acted reasonably and promptly in instituting an internal investigation and laterally moving Brown and Ludgatis to other districts, while noting the importance of taking steps following the shots-fired incident to give District Four "the opportunity to recover and resume operations at peak efficiency." (Doc. 23, PageID 344-345).

**D. No Section 1983 Liability**

To state a claim under 42 U.S.C. § 1983, a plaintiff must plead facts that show the defendant acted under color of state law and that the conduct deprived the plaintiff of a

federal constitutional or statutory right.³ *Graham v. National Collegiate Athletic Ass'n*, 804 F.2d 953, 957 (6th Cir. 1986) (citation omitted).

 1. Qualified Immunity

The City Defendants have invoked the doctrine of qualified immunity in this action. (Doc. 33, PageID 473). Under this doctrine, they are immune from civil liability under 42 U.S.C. § 1983 when performing discretionary duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Simmonds v. Genesee Cty.*, 682 F.3d 438, 443-44 (6th Cir. 2012), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine balances the need to hold public officials accountable with "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Once a defendant asserts qualified immunity, the burden rests with the plaintiff to prove the defendant is not entitled to qualified immunity. *See, e.g., Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). The plaintiff must show: (1) a defendant violated a constitutional right and, (2) the right was clearly established. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part on other grounds* by *Pearson v. Callahan*, 555 U.S. 223 (2009). Courts are free to choose which of the two inquiries to pursue first. *Pearson* at 236. Courts may employ a third step and inquire into "whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did

---

³ Concerning Plaintiffs' Section 1981 claims, Section 1983 is their exclusive means to bring damages suit against the state actor defendants in this action. *See, e.g., Aldridge v. City of Memphis*, 2008 U.S. Dist. LEXIS 67539, *7 ("Although § 1981 confers certain rights, the statute itself does not provide a cause of action for race discrimination.").

was objectively unreasonable in light of the clearly established constitutional rights." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005).

      2.    <u>Lack of Personal Involvement</u>

In addition, where individual defendants are concerned, a prerequisite for Section 1983 liability is the personal involvement of each defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976) (to establish the liability of any individual defendant, the plaintiff must show that that particular defendant was personally involved in the activities giving rise to the plaintiff's claims); *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability.").

      a)    <u>Cranley, Duhaney, and Black should be dismissed forthright</u>

As a threshold matter, it is evident from the face of the complaint that Plaintiffs have not alleged sufficient facts to proceed against any further against Mayor Cranley, Mr. Duhaney, or Mr. Black and thus these defendants should be dismissed from this action. The lack of personal involvement of Captain Pettis and Chief Isaac is discussed separately herein.

      3.    <u>No First Amendment Claim</u>

To state a claim for First Amendment retaliation, a plaintiff must allege facts showing (1) that the injury "would likely chill a person of ordinary firmness from continuing to engage in that activity," (2) that the person's conduct "was constitutionally protected," and (3) that it was a "motivating factor" behind the government's actions. *See, e.g., Leonard v. Pryne*, 2008 U.S. Dist. LEXIS 122110, 2008 WL 2557248 (S.D.

Ohio 2008) (citations omitted). Here, Brown and Ludgatis allege no constitutionally protected conduct that was a motivating factor behind the transfers.

Moreover, because the City Defendants have asserted the qualified immunity defense, the burden is squarely on Brown and Ludgatis to plead facts showing that any of the defendants acted in an objectively unreasonable manner. They plead no facts, for instance, in connection with any actual request or attempt they made to speak publicly, whether they were seeking to speak on a matter of public concern versus seeking to publicize an internal supervisory matter, whether they sought to speak through their counsel of record about their lawsuit versus a confidential law enforcement investigation, whether they sought to speak in uniform, etc. The burden is on Brown and Ludgatis to plead sufficient factual matter showing objectively unreasonable behavior on the part of any defendant, and they fail in their burden.

Furthermore, the Sixth Circuit has also observed that "absent proof of a concrete harm, where a First Amendment plaintiff only alleges inhibition of speech, the federal courts routinely hold that no standing exists." *Morrison v. Bd. of Educ.*, 521 F.3d 602, 609-610 (6th Cir. 2008). To the extent that Brown and Ludgatis allege a fear of First Amendment retaliation, that fear is speculative and is insufficient to give them standing to pursue such a claim.

    4.   <u>No Equal Protection or Disparate Treatment Claim</u>

Requirements for bringing a prima facie claim of discrimination under 42 U.S.C. § 1983 are the same as bringing a prima facie claim of discrimination under Title VII. *Aldridge v. City of Memphis*, 2008 U.S. Dist. LEXIS 67539, *9. To the extent that Brown and Ludgatis allege a race-based double standard in how requests to speak to the

media are handled, their pleadings fail to allege facts showing they were treated more unfavorably than Pettis was. Thus, no prima face claim lies here.

### 5. No Injury Alleged From Any Enforcement of Any Consent Decree

Plaintiffs seek to challenge state and federal consent decrees governing promotion despite alleging no facts showing they ever sought promotion. Standing is the "threshold question in every federal case." *Fieger v. Mich. Supreme Court*, 553 F.3d 955, 961 (6th Cir. 2009). No plaintiff can litigate a case in federal court without establishing constitutional standing, which requires a showing that the plaintiff has suffered (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct and that is (3) likely to be redressed by the requested relief. *Id*. at 349 (quotations omitted), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It is the plaintiff, not the defendant, who bears the burden of establishing standing. *Fieger* at 962. Here, Plaintiffs have alleged no facts showing injury as a result of how either consent decree they attach to their pleadings was applied to them. It is their burden to show they have standing and they fail in their burden.

**E. No Claim Under R.C. 4112**

Under Ohio law, "an employer may not discharge without just cause, refuse to hire or otherwise discriminate against an individual with respect to hire, tenure, terms, conditions or privileges of employment 'because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry' of that person." *Burns v. Ohio State Univ. College of Veterinary Med.*, 10th Dist. Franklin No. 13AP-633, 2014-Ohio-1190, ¶ 6, quoting R.C. 4112.02(A). The Title VII analysis set forth above applies here as well, and Brown and Ludgatis' claims under R.C. Chapter 4112 fail as a result. *See Smith v. Superior Prod., LLC*, 10th District Franklin No. 13AP-690, 2014-Ohio-1961, ¶ 13 ("It is

the practice of Ohio courts to refer to federal case law interpreting Title VII of the Civil Rights Act of 1964 in our analysis of R.C. Chapter 4112.").

In addition, the Ohio Supreme Court has ruled that individual political-subdivision employees are entitled to immunity under R.C. 2744.03 for claims under R.C. 4112.02. *Hauser v. City of Dayton Police Dep't*, 2014-Ohio-3636, 140 Ohio St.3d 268. Accordingly, Brown and Ludgatis' claims against the individual defendants named are not viable and should be dismissed on this ground as well.

## V. CONCLUSION

The City Defendants respectfully request that the Court grant their Rule 12(C) motion for judgment on the pleadings and dismiss all claims in their entirety.

Respectfully submitted,

**PAULA BOGGS MUETHING (0080018)**
**CITY SOLICITOR**

*/s/ Shuva J. Paul*
Shuva J. Paul (0088484)
Emily Smart Woerner (0089349)
Peter J. Stackpole (0072103)
801 Plum Street, Suite 214
Cincinnati, Ohio 45202
(513) 352-4551
shuva.paul@cincinnati-oh.gov
*Trial Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed on October 14, 2019 with the Clerk of Courts via the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system, and they may access this filing through that system.

*/s/ Shuva J. Paul*
Shuva J. Paul (0088484)