**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Tamera Brown, et al., | : | Case No. 1:18cv412 |
| Plaintiffs, | : | Judge Dlott<br>Magistrate Judge Litkovitz |
| | : | |
| v. | | **PLAINTIFFS' RESPONSE TO THE SENTINEL POLICE ASSOCIATION AND DANITA PETTIS'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| | : | |
| City of Cincinnati, et al., | : | |
| Defendants. | : | |

I.  **Introduction**

Plaintiffs, Tamara Brown and Joy Ludgatis ("Plaintiffs") filed a Second Amended Complaint, in which they assert claims against Defendants the City of Cincinnati ("the City"), Mayor Cranley, Captain Pettis, Mr. Duhaney, Mr. Black, and Chief Isaac ("Defendants") based on 42 U.S.C. § 2000e-2(a), 42 U.S.C. § 2000e-3, 42 U.S.C. § 1981 and § 1983 and R.C. § 4112.01 *et. seq.* Plaintiffs included Defendant Sentinel Police Association ("Sentinel") as a party due to its role as a signatory on Federal and State Consent decrees which Plaintiffs claim are unconstitutional and which they seek to terminate.

Plaintiffs' claims stem from incidents which occurred in November 2017, involving the City of Cincinnati Police Department's roll call after a "shot fired" incident. At the time of the "shots fired" incident, Plaintiffs, who are Caucasian females, were employed as Cincinnati police officers stationed at District Four. As outlined in Plaintiffs' Second Amended Complaint, Defendant Captain Pettis ("Pettis"), an African American female and Plaintiffs' supervising lieutenant at the time of the roll call, engaged in hostile, demeaning, and unprofessional behavior toward Plaintiffs, causing Plaintiff Brown to file internal complaint. After an internal investigation

1

was completed, Defendants unlawfully retaliated against Plaintiffs by transferring them to different districts, which involved more dangerous and difficult work duties and hours.

Plaintiffs subsequently filed EEOC charges based on this conduct, and within 300 days of Defendants' offending conduct, filed the within lawsuit. Plaintiffs' Second Amended Complaint presents with factually specific detail how these events occurred within the context of the City's unconstitutional race-based policies for hiring, promotion, discipline, and conferring benefits of employment among and upon the ranks of the Cincinnati Police Department.

In response, Pettis and Sentinel (collectively referred to as "Defendants") filed a Motion for Judgment on the Pleadings. As an initial matter, in submitting a supporting memorandum that exceeds 20 pages, Defendants have violated this Court's Standing Order, which requires a party to seek leave of court prior to filing a supporting memorandum in excess of 20 pages. (See Judge Dlott's Standing Orders on Civil Procedures, Section I. E.(d), Motions.) Since Defendants failed to seek leave before filing their memorandum, Plaintiffs request this Court to strike the Motion in its entirety or in the alternative, to disregard any arguments contained in pages exceeding the 20 page limit.

Further, similar to the City Defendants' separately filed Motion for Judgment on the Pleadings, Defendants improperly request this Court to make factual, dispositive findings on the main elements of Plaintiffs' claims, which is procedurally improper on a Rule 12(c) motion. Even though Plaintiffs' Second Amended Complaint contains sufficient factual support for their claims, Defendants request this Court to ignore the majority of allegations, and decide the merits of Plaintiffs' claims based on a few isolated allegations taken out of context. Accordingly, Defendants' Motion is not well-taken and should be denied.

## II.     Rule 12(c) standard

The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Fed.R.Civ.P. 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir.2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir.1998)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir.2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir.1973)). The court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell A. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). But the court does not need to accept legal conclusions or unwarranted factual inferences as true. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir.1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987)). Further the court can only grant a Rule 12(c) motion when "**no material issue of fact exists** and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir.1991).

A court does not address the merits of the claims set forth in the complaint on a motion for judgment on the pleadings. See, for example, *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978). For this reason, a Rule 12(c) motion is appropriate only when pleadings present a pure question of law. *Constitution Party of Ohio v. Brunner*, S.D. Ohio No. 2:08-cv-666 (March 16, 2009); *Voest-Apline Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir.1998) ("Judgment on the pleadings pursuant to Rule 12(c) is appropriate when the facts are

undisputed and only questions of law remain."); 5C Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1367 (3d ed.2010)("[A] Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which the district court will take judicial notice.").

In ruling on a Rule 12(c) motion, the court considers all available pleadings, including the complaint and the answer. See Fed.R.Civ.P. 12(c). "The court can also consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F.Supp.2d 826, 832 (N.D.Ohio 2010) (citations omitted). But extraneous documents that the court considers on a Rule 12(C) motion must be (1) central to the plaintiff's claim, and (2) undisputed in terms of authenticity. *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir.2010); *Harris v. Ivax Corp.*, 182 F.3d 799, n. 2 (11th Cir.1999).

III. **Argument**

  A. **Plaintiffs incorporate all arguments in response to the City Defendants' Motion for Judgment on the Pleadings**

Many of the arguments advanced by Defendants are similar to those advanced by the City Defendants in support of their Motion for Judgment on the Pleadings. Accordingly, Plaintiffs incorporate all arguments contained in their Response to this City Defendants' Motion for Judgment on the Pleadings as if fully re-stated here.

### B. Plaintiffs have standing to request injunctive relief

Defendants challenge Plaintiffs' standing to seek injunctive relief on their employment claims. Specifically, Defendants insist that Plaintiffs fail to allege any concrete present or future harm, wrongfully implying that Plaintiffs only allege 3 instances of harassment, 2 of which took place in November, 2017 and one in April, 2018, after their December, 2017 transfer.[1]

But Defendants' arguments ignore Plaintiffs' allegations of present and continuing discriminatory practices. In particular, Plaintiffs allege that Defendants the City, Cranley, Duhaney, Black, and Isaac:

- have instituted and perpetuated unconstitutional race-based policies for hiring, promotion, discipline, and conferring benefits of employment among and upon the ranks of the Cincinnati Police Department (Second Amended Complaint, Doc. #23, ¶ 18); and

- have implemented and continue to implement an unconstitutional race-based State Consent Decree and an unconstitutional race-based Federal Consent Decree that predicate promotions among qualified candidates based solely and exclusively on racial criteria (Second Amended Complaint, Doc. #23, ¶ 19).

In addition, Plaintiffs allege the **current** existence of unconstitutional race-based policies regarding:

- discipline among the Cincinnati Police Department, that results in a double standard that permissively condones misconduct for certain officers that would subject others to discipline (Second Amended Complaint, Doc. #23, ¶ 23);

---

[1] Plaintiffs have named the Sentinels as a necessary party under Fed.R.Civ.P. 19, since they were signatories to the Federal and State consent decrees. But Plaintiffs but have not requested injunctive relief against them. (Second Amended Complaint, Doc. #23, ¶ 11.) Rather, Plaintiffs request injunctive relief against the City Defendants. Accordingly, Defendants have no grounds to challenge Plaintiffs' claims against other Defendants. See, for example, *Davis v. City of Aurora*, 705 F.Supp.2d 1243 (D.Colo.2010), fn 1 ("However, it is not clear on what grounds these individual defendants believe they have the standing to challenge claims asserted against other defendants.").

- assigning detail that confers benefits of employment through preferred detail assignments on some officers based solely on their race and excludes other equally qualified officers based solely on their race (Second Amended Complaint, Doc. #23, ¶ 24);

- permitting black officers to speak with media outlets and exercise their First Amendment rights while denying the same to white officers (Second Amended Complaint, Doc. #23, ¶ 25);

- permitting insubordination and violation of the rules for chain of command by black officers, including Pettis, that would subject others to discipline or termination (Second Amended Complaint, Doc. #23, ¶ 26);

- permitting theft in office and fraudulent and excessive claims for overtime compensation by black officers, including specifically Pettis, that would subject others to discipline or termination (Second Amended Complaint, Doc. #23, ¶ 27);

- creating a hostile work environment by predicating overtime income and benefits on submission to sexual advances made by the chief of police (Second Amended Complaint, Doc. #23, ¶ 28).

As alleged in the Second Amended Complaint, these policies have had an aggregate effect of creating an atmosphere of racial tension and in some cases open hostility between officers of different races and has unnecessarily created racial tension and division among the ranks of the Cincinnati Police Department which has jeopardized officer safety. (Second Amended Complaint, Doc. #23, ¶¶ 29-31).

Further, Plaintiffs have alleged that the City engaged in discriminatory conduct **after** the transfers. Specifically, they allege that

- The City's attempts to remediate the hostile work environment have been ineffective, and Pettis continues to direct aggressive, hostile, demeaning, abusive, and unprofessional comments toward Ludgatis (Second Amended Complaint, Doc. #23, ¶ 51); and that

- Pettis continues to spread inaccurate information and disparaging remarks about Ludgatis to fellow officers, creating a hostile and disruptive environment (Second Amended Complaint, Doc. #23, ¶ 52).

Thus, contrary to Defendants' assertions, Plaintiffs have described in detail a far more severe and pervasive hostile environment than the occurrence of 3 isolated incidents, one that continues to

exist and which the City has not remediated. In fact, Plaintiffs have alleged that the racial discrimination continues in "perpetuity," due to Defendants' continued adherence to unlawful State and Federal Consent decrees. (See Second Amended Complaint, Doc. #23, ¶¶ 18-22). As a result of this severe and pervasive discrimination, Plaintiffs alleged to have suffered significant stress and anxiety from these race based policies, which have resulted in physical manifestations. (Second Amended Complaint, Doc. #23, ¶¶ 54-56.)

These allegations of existing, continuing harmful conduct clearly establish standing. "Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). The components of standing are threefold-the plaintiff must establish (1) injury in fact, (2) causation, and (3) redressability. Id. at 103. The injury in fact element requires the plaintiff to "allege an injury to himself that is 'distinct and palpable,' as opposed to merely 'abstract,' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'" *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (internal citations omitted).

In challenging Plaintiffs' standing based on a factual conclusion—that Plaintiffs only experienced 3 isolated instances of harassment--Defendants improperly request this Court to render a dispositive finding regarding the severity and pervasiveness of the hostile environment existing in the City Police Department. To do so would require this Court to ignore—or find untrue-- the above allegations sufficiently plead in Plaintiffs' Second Amended Complaint. This is simply improper at this stage of the litigation.

Defendants further contend that Plaintiffs lack standing to seek termination of the Federal and State consent decrees, since these decrees only concern hiring and promotions, and Plaintiffs do not allege that they were passed over for any promotions. But again, Defendants misconstrue

the nature of Plaintiffs' allegations here. The Second Amended Complaint alleges that the City's unconstitutional race based policies of hiring unqualified candidates based on race based criteria, occasioned by the Consent decrees (Second Amended Complaint, Doc. #23, ¶¶ 18-19), allows certain officers, including Pettis, to engage in misconduct that would subject others to discipline. (Second Amended Complaint, Doc. #23, ¶¶ 23-26). These race based policies resulted in the creation of a hostile work environment for Plaintiffs, "permeated with discriminatory intimidation, ridicule and insult," (¶ 85), under which they were subjected to Pettis's bullying and inappropriate remarks and inquiries (Second Amended Complaint, Doc. #23, ¶¶ 86-87), and were subjected to criticism, review, and counseling by Defendant Pettis for conduct that was not subject to criticism, review, or counseling by Pettis when engaged in by officers who were not white females. (Second Amended Complaint, Doc. #23, ¶¶ 88). Taking these allegations as true, as the Court must do on a Rule 12(c) motion, Plaintiffs have alleged an injury caused by the City Defendants' unlawful adherence to the Consent decrees, which must be redressed through injunctive relief.

### C. Plaintiffs have stated viable Title VII discrimination claims

#### 1. Pettis is liable under Title VII as a supervisor

Plaintiffs concede that they are not seeking to hold the Sentinels liable as employers under Title VII. But as for Pettis, courts have recognized that a supervisor may be sued in her official capacity under Title VII if the she had significant control over the plaintiffs' hiring, firing and working conditions such that she could be considered the "alter ego" of [employer]." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, fn.2. Plaintiffs' Second Amended Complaint establishes that Pettis had control over Plaintiffs' working conditions in creating an abusive and hostile environment.

8

### 2. Pettis created a hostile work environment

#### a. The hostile work environment was based on race

Defendants contend that because neither Plaintiffs claimed that Pettis's conduct was based on race during the internal investigation, then their hostile environment claims cannot be based on race. But Defendants ignore the allegations of the Second Amended Complaint that detail Pettis's and the City's race based conduct, as well Plaintiffs' EEOC charges, attached as exhibits to the Second Amended Complaint. In fact, Plaintiffs' Second Amended Complaint is replete with allegations of Defendants' race based policies for hiring, promotion, discipline, and conferring benefits of employment among and upon the ranks of the Cincinnati Police Department. (See argument, *supra*, referenced in this Response Memorandum under Section IIIB, pages 5-7.)

#### b. The work environment was hostile

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)(internal quotations and citations omitted). This analysis is subject to both an objective and subjective test, such that the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive. Id. at 21-22. The court must consider the totality of the circumstances when determining whether, objectively, the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment. See *Williams v. General Motors*, 187 F.3d 553, 562 (6th Cir.1999). "[T]he issue is

9

not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether--taken together--the reported incidents make out such a case." Id. The work environment as a whole must be considered rather than a focus on individual acts of alleged hostility. Id. at 563. In determining whether conduct is severe or pervasive enough to constitute a hostile work environment, a court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

In insisting that Plaintiffs' workplace was not hostile, Defendants reiterate the same inaccuracies that they advance under their standing challenge – that Plaintiffs only complain of 3 instances of harassment. But, as stated above, this argument ignores the numerous allegations contained in Plaintiffs' Second Amended Complaint that detail a background of severe, pervasive race based policies that existed and continue to exist in the City Police Department.

Further, by ignoring the majority of Plaintiffs' allegations, Defendants improperly request this Court to made a factual finding regarding the severity and pervasiveness of the harassment to which they were subjected. This is improper on a Rule 12(c) motion. In fact, **all** of the cases upon which Defendants rely in support of their argument involve summary judgment or post-trial motions, where the court has the opportunity to consider the evidence of the case, and not merely the factual allegations.[2] That Defendants rely on these cases to support their argument is telling – they are clearly seeking improper factual findings in a motion directed toward the pleadings.

---

[2] **Summary Judgment cases**: *Bowman v Shawnee State University*, 220 F.3d 456 (6th Cir.2000); *Burnett v. Tyco Corp.*, 203 F.3d 980 (6th Cir.2000); *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir.2000), *Jackson v. SelectTech Services Corp.*, No. 3:09-cv-245, 2012 WL 252728 (S.D. Ohio Jan. 26, 2012); *Reed v. Proctor & Gamble Mfg. Co.*, 556 Fed.Appx. 421 (6th Cir.2014); *Clark v. United Parcel Service, Inc.*, 400 F.3d 341 (6th Cir.2005); *Williams v. GMC*, 187 F.3d 553 (6th Cir.1999);

### c. The City is liable for the hostile environment

Defendants insist that the City is not liable under Title VII, since it did not manifest indifference or unreasonableness. Specifically, Defendants claim that because the City conducted an internal investigation and transferred Plaintiffs, they took effective remedial action. Aa an initial matter, Defendants have already stated that they are not employers under Title VII, so they have no standing to raise arguments about claims Plaintiffs have asserted against other Defendants. Further, consistent with the majority of Defendants' arguments, they improperly seek factual findings regarding the Plaintiffs' allegations in their Rule 12(c) Motion. Plaintiffs' Second Amended Complaint alleges a litany of unconstitutional race based policies that existed before the shots fired incident, and which were not remediated by the City's internal investigation or transfers.

Further, Plaintiffs' transfers were adverse; Plaintiffs were transferred to more difficult work details with less flexible hours, so these retaliatory actions cannot be the basis of a finding of corrective remedial measures. (See argument *infra*.)

### 3. Plaintiffs' transfers were retaliatory

Defendants contend that Plaintiffs were not engaged in protected activity when they submitted complaints about the 2017 shots fired incident, since those complaints did not contain allegations of racial or sexual discrimination. But again, Defendants ignore the allegations of the Second Amended Complaint that refer to the race based policies that precipitated the shots fired incident. In other words, Plaintiffs allege retaliation based on Defendants' conduct **before** they filed the EEOC charges: "Defendants have discriminated and retaliated against Plaintiffs because

---

*Armstrong v. Whirlpool Corp.*, 363 Fed.Appx. 317, 324-325 (6th Cir.2010) . **Post-trial Rule 50(b) motion**: *Black v. Zaring Homes, Inc.,* 104 F.3d 822, 825-826 (6th Cir. 1997).

Plaintiffs have opposed practices made unlawful, have filed complaints, and have participated in investigations and proceedings provided for under 42 U.S.C. § 2000e and its subchapters." (Second Amended Complaint, Doc. #23, ¶ 96). Defendants cannot pick certain allegations to support a Rule 12(c) motion and then ignore the totality of the complaint.

Further, contrary to Defendants' contentions, Plaintiffs' transfers constituted materially adverse changes in employment. Defendants insist that because Plaintiffs' transfers did not result in a loss of pay, benefits or rank, they did not suffer a significant change in employment to state a Title VII claim. An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (quoting *Burlington Indus, v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). It must be "more disruptive than a mere inconvenience or alteration of job responsibilities." *Michael v. Caterpillar Fin. Servs: Corp.*, 496 F.3d 584, 594 (6th Cir.2007).

Plaintiffs have clearly alleged that their re-assignments resulted in significantly different circumstances, including more difficult and dangerous work: "The retaliatory transfers suffered by Plaintiffs were to Districts that were less prestigious, more difficult and dangerous to work, and involved changes in hours that upset Plaintiffs' work and personal schedules." (Second Amended Complaint, Doc. #23, ¶ 90). Further, Brown alleged to have developed "physical manifestations of … stress, including stomach ulcers for which she is undergoing continuing medical treatment," while Ludgatis has alleged to experienced "stress and anxiety daily which affects her ability to perform her job responsibilities and disrupts her sleep schedule and domestic life." (Second Amended Compliant, Doc. #23, ¶¶ 55-56.) Thus, Plaintiffs have sufficiently alleged an adverse employment condition.

Finally, Defendants had no legitimate need to transfer Plaintiffs. They claim that the transfers were necessary to avoid the confrontational environment in District Four and because Plaintiffs requested the transfers. But as referenced above, Plaintiffs allege that the transfers were adverse, and resulted in more difficult work detail and less flexible schedules. They further allege that the City transferred them within the context of race based policies and procedures, negating any legitimate purpose.

### D. Plaintiffs have properly plead state law and Section 1983 claims

Defendants insist that because Plaintiffs' Title VII claims fail, they cannot recover on their state law claims under R.C. 4112 and their federal Section 1983 claims. But this is a circular argument. Plaintiffs have already demonstrated the viability of their Title VII claims and incorporate those arguments as if restated here.

### E. Plaintiffs have properly plead First Amendment claims

As an initial matter, the majority of Defendants' First Amendment arguments are contained on pages that exceed the Court's 20 page limit. Therefore, Defendants request this Court to disregard those arguments, since they did not seek leave to file a brief in excess of 20 pages under this Court's Standing Order. To the extent that the Court considers them, Plaintiffs concede that they have not stated Section 1983 claims for First Amendment Violations against the Sentinels.

As for Pettis, she is not entitled to qualified immunity. Government officials or employees performing discretionary functions, including police officers, are entitled to qualified immunity "insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). As an initial matter, Defendants have failed to describe the discretionary functions at issue which entitle them to immunity. The government official bears the burden of

demonstrating that he was performing a discretionary function. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir.2004); *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir.2003) ("Under qualified immunity analysis, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place.").

Regardless, Plaintiffs' Second Amended Complaint alleges that Pettis committed violations of Plaintiffs' constitutional rights. Specifically, Plaintiffs allege that Defendants "transferred Plaintiffs to another district and made other adverse employment decisions affecting the terms, conditions, and privileges of Plaintiffs' employment, in direct retaliation for Plaintiffs' protected speech and conduct on matters of public concern as guaranteed by the First and Fourteenth Amendments." Thus, construing these allegations as true, Plaintiffs' Second Amended Complaint alleges that Pettis violated Plaintiffs' constitutional rights, rights of which a reasonable person should have known.

IV. **Conclusion**

Based on the above arguments, Plaintiffs request this Court to deny the Defendants' Motion for Judgment on the Pleadings.

        Respectfully submitted,

        */s/Zachary Gottesman*
        Zachary Gottesman (0058675)
        Gottesman & Associates, LLC
        Trial Counsel for Plaintiffs
        404 East 12th St., First Floor
        Cincinnati, OH 45202-7463
        T: 513-651-2121
        F: 513-651-2131
        zg@zgottesmanlaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on Nov. 25, 2019, a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. No copies of this filing are being mailed to any parties, as all parties are currently being served via the Court's electronic filing system and thereby may access this filing through that system.

                                              */s/ Zachary Gottesman*
                                              Zachary Gottesman (0058675)