**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Tamera Brown, et al., | : | Case No. 1:18cv412 |
| Plaintiffs, | : | Judge Dlott |
| | | Magistrate Judge Litkovitz |
| | : | |
| v. | : | **CORRECTED PLAINTIFFS'** |
| | | **RESPONSE TO THE CITY** |
| | : | **DEFENDANTS' MOTION FOR** |
| City of Cincinnati, et al., | : | **JUDGMENT ON THE PLEADINGS** |
| Defendants. | : | |

I.      **Introduction**

Plaintiffs, Tamara Brown and Joy Ludgatis ("Plaintiffs") filed a Second Amended Complaint, in which they assert claims against Defendants the City of Cincinnati ("the City"), Mayor Cranley, Captain Pettis, Mr. Duhaney, Mr. Black, and Chief Isaac ("Defendants") based on 42 U.S.C. § 2000e-2(a), 42 U.S.C. § 2000e-3, 42 U.S.C. § 1981 and § 1983 and R.C. § 4112.01 *et. seq.*  These claims stem from incidents which occurred in November 2017, involving the City of Cincinnati Police Department's roll call after a "shot fired" incident. At the time of the "shots fired" incident, Plaintiffs, who are Caucasian females, were employed as Cincinnati police officers stationed at District Four.

Defendant Pettis, an African American female and Plaintiffs' supervising lieutenant at the time of the roll call, engaged in hostile, demeaning, and unprofessional behavior toward Plaintiffs, causing Plaintiff Brown to file internal complaint. After an internal investigation was completed, Defendants unlawfully retaliated against Plaintiffs by transferring them to different districts, which involved more dangerous and difficult work duties and hours.

1

Plaintiffs filed EEOC charges based on this conduct, and within 300 days of Defendants' offending conduct, filed the within lawsuit. Plaintiffs' Second Amended Complaint presents with factually specific detail how these events occurred within the context of the City's unconstitutional race-based policies for hiring, promotion, discipline, and conferring benefits of employment upon the ranks of the Cincinnati Police Department. Defendants' Motion for Judgment on the Pleadings asks this Court to resolve material factual issues and reach a judgment on the merits based solely the allegations of Plaintiffs' Second Amended Complaint. However, this Court is required to construe all factual allegations in favor of Plaintiffs. For that reason, Defendants' Motion should be denied.

In fact, Defendants' Rule 12(c) Motion consists of little more than conclusory assertions based on out-of-context, isolated factual extrapolations from the Complaint exhibits and generic arguments, non-specific to any asserted claims. Since this Court cannot make factual determinations or decide the merits of Plaintiffs' claims under Rule 12(c), and the majority of Defendants' arguments involve contested factual issues central to Plaintiffs' claims, their Motion must be denied.

## II. **Rule 12(c) standard**

The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Fed.R.Civ.P. 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co*., 246 F.3d 850, 851 (6th Cir.2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir.1998)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir.2007) (quoting *S. Ohio Bank v. Merrill*

*Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir.1973)). The court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell A. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). But the court does not need to accept legal conclusions or unwarranted factual inferences as true. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir.1999) (citing *Morgan v. Church's Fried Chicken* , 829 F.2d 10, 12 (6th Cir.1987)). Further the court can only grant a Rule 12(c) motion when "**no material issue of fact exists** and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir.1991).

A court does not address the merits of the claims set forth in the complaint on a motion for judgment on the pleadings. See, for example, *Rauch v. Day & Night Mfg. Corp*., 576 F.2d 697, 702 (6th Cir. 1978). For this reason, a Rule 12(c) motion is appropriate only when pleadings present a pure question of law. *Constitution Party of Ohio v. Brunner*, S.D. Ohio No. 2:08-cv-666 (March 16, 2009); *Voest-Apline Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir.1998) ("Judgment on the pleadings pursuant to Rule 12(c) is appropriate when the facts are undisputed and only questions of law remain."); 5C Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1367 (3d ed.2010)("[A] Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which the district court will take judicial notice.").

In ruling on a Rule 12(c) motion, the court considers all available pleadings, including the complaint and the answer. See Fed.R.Civ.P. 12(c). "The court can also consider: (1) any documents

attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F.Supp.2d 826, 832 (N.D.Ohio 2010) (citations omitted). But extraneous documents that the court considers on a Rule 12(C) motion must be (1) central to the plaintiff's claim, and (2) undisputed in terms of authenticity. *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir.2010); *Harris v. Ivax Corp.*, 182 F.3d 799, n. 2 (11th Cir.1999).

III.  **Argument**

A. **Plaintiffs have exhausted their administrative remedies**

1. **Plaintiffs' claims are timely**

Defendants contend that Plaintiffs have failed to exhaust their administrative remedies, first arguing that their claims are untimely. But Defendants fail to identify any specific claims which were not timely filed. Generally, the timely filing of a charge of discrimination with the EEOC is a condition precedent to a Title VII lawsuit. *E.E.O.C. v. Atlas Paper Box*, 868 F.2d 1487, 1495 (6th Cir.1989); *Alexander v. Local 496, Laborers' Intern. Union of North America*, 177 F.3d 394, 407 (6th Cir.1999) Since Ohio is a "deferral state," a plaintiff must file suit within 300 days of the alleged discriminatory act. See 42 U.S.C.. § 2000e-5(e); *EEOC v. Penton Indus. Pub. Co.*, 851 F.2d 835, n. 5 (6th Cir.1988); *Alexander v. Local 496, Laborers' Intern. Union of North America*, 177 F.3d 394, 407 (6th Cir.1999).

Plaintiff Brown filed her EEOC complaint on March 13, 2018; Plaintiff Ludgatis filed hers on March 14, 2018. Plaintiffs' Second Amended Complaint describes conduct which occurred on November 16, 2017 and November 24, 2017 that precipitated Brown's internal complaints:

- Brown's [internal] complaint references an incident on 16 November 2017 during which Pettis held 3rd shift officers in roll call while white 2nd shift officers were calling for assistance because of shots fired at them. Pettis did not release officers from roll call to render assistance. (Second Amended Complaint, Doc. #23, ¶ 41.)

- Brown also describes in her complaint another roll call conducted by Pettis on 24 November 2017 during which Pettis' behavior was so hostile, demeaning, and unprofessional that the entire 3rd Shift of District 4 sent a memo to Isaac requesting a conference regarding Pettis' practices of verbal abuse and emotional intimidation and their collective fear of unfair retaliation. (Second Amended Complaint, Doc. #23, ¶ 42.)

Further, both Plaintiffs' EEOC claims reference the November 2017 time frame. Brown's

EEOC complaint states as follows:

I.      I am Caucasian. I have been subjected to a hostile work environment by my supervisor, Lieutenant Danita Pettis, African American. On November 26, 2017, I filed a formal complaint. On November 28, 2017, LT Pettis filed a complaint against me. On December 16, 2017, I was transferred.

II.     Management was aware of Lieutenant Pettis behavior toward Caucasian female Officers. Management transferred me only after Lieutenant Pettis filed an erroneous complaint against me.

III.    I believe I have been discriminated and retaliated against, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Second Amended Complaint, Doc. #23, Exhibit 4.)

Similarly, Ludgatis referenced the November, 2017 conduct in her EEOC Complaint:

I.       On November 22, 2017, and November 24, 2017, I was verbally attacked and subjected to discriminatory treatment by Lt. Danita Pettis (Female) (African American), in the presence of coworkers because of my sex (Female) and race (Caucasian). During my employment, Lt. Danita Pettis has accused me of making derogatory remarks that were found to be untrue by a peer review. I was transferred to another District because of Lt. Pettis's unfounded accusation. On November 28, 2017, I filed a complaint against Lt. Pettis regarding the hostile work environment that was endorsed by coworkers. On December 1, 2017, Lt. Pettis submitted a transfer request in an attempt to have Officer Tamera Brown (Female) (Caucasian) and I reassigned. I am aware that Lt. Pettis filed a complaint regarding insubordinates creating a hostile work environment. On December 10, 2017, Officer Brown and I were transferred to another District.

II.     Management has failed to take corrective action and the discriminatory treatment continues.

III.    I believe that I and a class of employees have been discriminated against due to our sex (Female) and race (Caucasian) and retaliated against for our complaints in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Second Amended Complaint, Doc. #23, Exhibit 5.) Clearly, Defendants' offending conduct falls within the 300 day time period.

Further, Plaintiffs' Second Amended Complaint alleges claims of race based conduct in "perpetuity," due to Defendants' continued adherence to unlawful State and Federal Consent decrees. (See Second Amended Complaint, ¶¶ 18-22). Thus, these claims are continuing in nature and therefore fall within the 300 day time period. In fact, Defendants fail to articulate any particular claims which they contend are time barred. Rather, they advance a generic argument about hypothetical claims: "[t]o the extent Brown alleges unlawful employment practices occurring before May 17, 2017" and "Ludgatis alleges unlawful employment practices occurring before May 18, 2017, those claims are untimely."

**2.  Plaintiffs' claims fall within the scope of the EEOC Complaint**

Defendants next argue that since Plaintiffs "filed EEOC charges related to transfers following their complaints about a shots-fired incident," all of their claims "concerning anything except defendants' conduct related to those transfers are beyond the scope of the EEOC charges and should not be reviewed here." Again, Defendants fail to identify any specific claims which would be "beyond the scope of the EEOC charges." Absent any indication of what claims Defendants purport to be outside the scope of the EEOC charges, their request for judgment on hypothetical claims is procedurally improper.

Further, even assuming that they had pinpointed any specific claims as beyond the scope of the EEOC complaint (which they have not), Defendants emphasize form over substance here.

Courts will not focus on technicalities to avoid reaching the merits of a plaintiff's complaint. See, for example, *Portis v. Ohio*, 141 F.3d 632, 634-635 (6th Cir.1998). In the Sixth Circuit, the judicial complaint must be limited to the scope of the EEOC investigation **reasonably expected to grow out of the charge of discrimination**. *Weigle v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002). Courts focus on the facts of the EEOC charge, "rather than merely the boxes that are marked on the charge," to determine the scope of the charge. *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir.2004) (internal citations omitted). "[W]here facts related with respect to the charge claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 463 (6th Cir.1998).

In other words, the exhaustion requirement of Title VII "is not meant to be overly rigid." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir.2006). Accordingly, courts applying the exhaustion requirement should not restrict complaints based on "procedural technicalities" or where the charge does not contain "the exact wording which might be required in a judicial pleading." Id., quoting *EEOC v. McCall Printing Co*., 633 F.2d 1232, 1235 (6th Cir.1980)). Courts should liberally construe administrative changes to encompass all claims reasonably expected to grow out of the charges of discrimination. *Id*. Plaintiffs' EEOC Complaints describe Plaintiffs' race based, hostile work environment and wrongful retaliatory claims, all of which are encompassed in their Second Amended Complaint.

### B. Plaintiffs were subject to a hostile work environment

#### 1. Defendants Mayor Cranley, Captain Pettis, Mr. Duhaney, Mr. Black, and Chief Isaac are subject to individual liability

Defendants insist that the Defendant supervisors cannot be held individually liable on Plaintiffs' claims. They rely on *Hiler v. Brown*, 177 F.3d 542 6th Cir. 1999). As an initial matter,

this case only applies to claims based on Title VII, and does not apply to Plaintiffs' § 1981, § 1983 and Ohio state law claims.

### 2. **Defendants' complained of conduct was based on race**

Defendants improperly request this Court to determine a key disputed factual issue in this case – whether Defendants' offending conduct was race-based – on a Rule 12(c) motion. As discussed above, a motion for judgment on the pleadings is an inappropriate procedural vehicle to request factual findings, particularly factual findings so central to Plaintiffs' case. Defendants suggest that the exhibits attached to Plaintiffs' Complaint conclusively determine that Defendants' conduct was not race-based. But Defendants do not address these exhibits as a whole in the context of Plaintiffs' allegations, but rather extrapolate inadmissible, isolated bits of evidence from various exhibits in an attempt to have this Court reach a factual conclusion about the merits of Plaintiffs' claims. For example, they point to the IIS report's descriptions of witness statements and that fact that no witness stated that Pettis treated officers differently because of race as dispositive of Plaintiffs' claims. (Second Amended Complaint, Doc. #23, Exhibit 12.) But Defendants cannot rely on inadmissible hearsay materials to prove a contested factual issue on the merits of the claims.

Defendants also focus on a single comment in Brown's internal complaint—that Pettis' actions constituted an "abuse of rank"--to suggest that Brown did not believe that Pettis's actions were race based. (See Second Amended Complaint, Doc. #23, Exhibit 6.) But Defendants ignore the far more detailed allegations supporting that Pettis and Defendants engaged in race based conduct, as well as the EEOC charges attached to the Complaint. In fact, Plaintiffs' Second Amended Complaint is replete with allegations of Defendants' race based policies for hiring, promotion, discipline, and conferring benefits of employment among and upon the ranks of the

Cincinnati Police Department. For example, Paragraphs 18-31 clearly define Defendants' continued implementation of an unconstitutional race-based policies that:

- predicate promotions among qualified candidates based solely and exclusively on racial criteria (Second Amended Complaint, Doc. #23, ¶ 19);
- impose an unconstitutional race-based double standard for discipline, that permissively condones misconduct for certain officers that would subject others to discipline and that confers benefits of employment through preferred detail assignments on some officers based solely on their race and excludes other equally qualified officers based solely on their race (Second Amended Complaint, Doc. #23, ¶¶ 23-24);
- permits black officers to speak with media outlets and exercise their First Amendment rights while denying the same to white officers (Second Amended Complaint, Doc. #23, ¶ 25);
- permits insubordination and violation of the rules for chain of command by black officers, including specifically Pettis, that would subject others to discipline or termination (Second Amended Complaint, Doc. #23, ¶ 26);
- permits theft in office and fraudulent and excessive claims for overtime compensation by black officers, including specifically Pettis, that would subject others to discipline or termination (Second Amended Complaint, Doc. #23, ¶ 27); and
- creates a hostile work environment by predicating overtime income and benefits on submission to sexual advances made by the chief of police (Second Amended Complaint, Doc. #23, ¶ 28).

Plaintiffs further allege that these policies have had an aggregate effect of creating an atmosphere of racial tension and that certain officers, including specifically Pettis, view everything through a racial prism, and that the increased racial tension and division among the ranks of the Cincinnati Police Department has jeopardized officer safety.  (Second Amended Complaint, Doc. #23, ¶¶ 29-31). Accordingly, given the factual allegations supporting Plaintiffs' race based claims, Defendants' improper attempt to have this Court reach the merits of a key factual issue on a 12(c) motion should be rejected.

### 3. **Defendants created a severe and pervasive hostile environment**

In a similar vein, Defendants request this Court to determine that the hostile environment created by Defendants, and specifically by Pettis's verbally abusive behavior toward Plaintiffs, was not sufficiently "severe" or "pervasive" to support a Title VII claim.  Not only is this another

highly contested factual issue, improper for resolution on a 12(c) motion, but Defendants mischaracterize the nature of their unlawful conduct in an attempt to downplay its serious and pervasive nature.

Defendants liken the "shots fired" roll call incident to a single incident causing nothing more than a bruised ego. They rely on *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 886-87 (6th Cir.1996) for support, but in that case the court concluded that the plaintiff failed to suffer a materially adverse employment action because she transferred to a job with the same duties and the same or greater rate of pay and benefits. Defendants also rely on *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 121 St.Ct. 1508, 149 L.Ed.2d 509 (2001), syllabus, in which the United States Supreme Court determined that a single offhand comment made during a meeting did not constitute discrimination:

> Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in employment terms and conditions. The actions of respondent's supervisor and co-worker are at worst an isolated incident that cannot remotely be considered "extremely serious." Regarding respondent's claim that she was punitively transferred for filing charges and the present suit, she failed to show the requisite causal connection between her protected activities and the transfer. Petitioner did not implement the transfer until 20 months after respondent filed her charges, and it was contemplating the transfer before it learned of her suit.

Plaintiffs allege far more serious conduct than a single incident; their Second Amended Complaint contains numerous allegations detailing the severe, pervasive race based policies that exist in the City Police Department. Further, the Complaint, along with Plaintiffs' attachments, describe the hostile environment created by Defendant Pettis during the "shots fired" roll call and the retaliatory acts which the Defendants took in response to Plaintiffs' complaints about these actions. As a result of the internal investigation, Plaintiffs were transferred to different Districts–which constituted a significant and detrimental change in their employment.

Defendants further request this Court to take "judicial notice" that the "that the Cincinnati Police Department, being a municipal police department, is a highly centralized and formally organized body with a chain of command recognized by its sworn members," such that "comments made to rank-and-file police officers by their superior officers, whether during roll call or elsewhere, typically must be viewed within a culture of rigid discipline not seen in other types of organizations that are more suited to participatory decision making from staff at all levels." Defendants have not demonstrated any reason for the Court to take judicial notice of this fact. Judicial notice is inappropriate when the facts are subject to reasonable dispute and do not otherwise meet the judicial notice criteria under Fed.R.Evid. 201. *Cary v. Cordish Co.*, 731 Fed.Appx. 401, 406 (6th Cir. 2018). Fed.R.Evid. 201 provides that a court made take judicially notice of facts "not subject to reasonable dispute" if such facts are (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Defendants have failed to articulate either of these conditions, or to prove that such facts are not subject to reasonable dispute.

Further, even if this Court could take judicial notice of these facts, they do not change Plaintiffs' allegations that Defendant Pettis exhibited race based verbally abusive and demeaning behavior towards them against a backdrop of unconstitutional race based policies for discipline to police officers. Nor do they change the fact that when Plaintiffs complained about such behavior, Defendants unlawfully retaliated against them by transferring them to more difficult and demanding employment.

### 4. Plaintiffs suffered an adverse employment condition due to Defendants' discrimination and retaliation

Defendants insist that because Plaintiffs' transfers did not result in a loss of pay, benefits or rank, they did not suffer a significant change in employment to state a Title VII claim. An

adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (quoting *Burlington Indus, v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). It must be "more disruptive than a mere inconvenience or alteration of job responsibilities." *Michael v. Caterpillar Fin. Servs: Corp.*, 496 F.3d 584, 594 (6th Cir.2007).

Plaintiffs have clearly alleged that their re-assignments resulted in significantly different circumstances, including more difficult and dangerous work: "The retaliatory transfers suffered by Plaintiffs were to Districts that were less prestigious, more difficult and dangerous to work, and involved changes in hours that upset Plaintiffs' work and personal schedules." (Second Amended Complaint, Doc. #23, ¶ 90). Further, Brown alleged to have developed "physical manifestations of … stress, including stomach ulcers for which she is undergoing continuing medical treatment," while Ludgatis has alleged to experienced "stress and anxiety daily which affects her ability to perform her job responsibilities and disrupts her sleep schedule and domestic life." (Second Amended Complaint, Doc. #23, ¶¶ 55-56.) Thus, Plaintiffs have sufficiently alleged an adverse employment condition.

## C. Defendants engaged in unlawful retaliation under Title VII

Defendants contend that Plaintiffs have failed to demonstrate retaliation under Title VII because they filed their EEOC charges **after** their transfers. But Plaintiffs allege retaliation based on their conduct **before** they filed the EEOC charges: "Defendants have discriminated and retaliated against Plaintiffs because Plaintiffs have opposed practices made unlawful, have filed complaints, and have participated in investigations and proceedings provided for under 42 U.S.C. § 2000e and its subchapters." (Second Amended Complaint, Doc. #23, ¶ 96). Further, Defendants'

awareness of the protected activities is a given, since Plaintiffs filed their internal complaints and participated in the investigations with the Defendants.

    1.   **Defendants are not entitled to the *Ellerth-Faragher* Defense**

       An employer can raise an affirmative defense to a Title VII sexual harassment claim, which has come to be known as the *Ellerth Faragher* affirmative defense, when there is no tangible employer action. *Collette v. Stein-Mart, Inc.*, 126 Fed.Appx. 678, 682 (6th Cir.2005). The *Ellerth Faragher* affirmative defense is comprised of two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. (quoting *Burlington Industries v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

       While failing to differentiate between the two elements, Defendants insist that they are entitled to this defense because they transferred Brown and conducted an internal investigation, and therefore did not commit an unlawful employment practice. But this ignores the very nature of Plaintiffs' claims--that the Defendants had in place unconstitutional race based policies regarding hiring and discipline of Cincinnati police officers prior to the "shots fired" incident. In contrast, courts allow defendants to invoke this defense when they have had in place anti-harassment policies and procedures, as these provide evidence that the employer took sufficient steps to prevent harassment. *Collette v. Stein-Mart, Inc.*, 126 Fed.Appx. 678, 685 (6th Cir.2005)(citing *An v. Regents of Univ. of Cal.*, 94 Fed.Appx. 667, 674 (10th Cir. 2004) ("the sexual harassment policy and its dissemination generally evidence appropriate efforts to prevent sexual harassment"). Defendants cite to no City anti-harassment policies that were in effect prior

to the shots fired incident to evidence their intent to prevent the unlawful discrimination and retaliation.

Under the second prong of the *Ellerth Faragher* defense, the employee must have "failed to take advantage of opportunities to prevent or correct the harassment." *Collette*, 126 Fed.Appx. at 686. In this case, Defendants claim that the alleged "corrective" measure was the transfer, since Brown requested a transfer in her internal complaint. But by transferring her to a more difficult work detail with less flexible hours, Defendants caused further harm and retaliation, rather than avoided it.

**D. Plaintiffs have properly stated Section 1983 claims**

    **1. Defendants are not entitled to qualified immunity**

Government officials or employees performing discretionary functions, including police officers, are entitled to qualified immunity "insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). As an initial matter, Defendants have failed to describe the discretionary functions at issue which entitle them to immunity. The government official bears the burden of demonstrating that he was performing a discretionary function. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir.2004); *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir.2003) ("Under qualified immunity analysis, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place.").

Regardless, Plaintiffs' Second Amended Complaint alleges violations of Plaintiffs' constitutional rights. Specifically, Plaintiffs allege that Defendants:

- Prevented them from speaking publicly to the media about this lawsuit and the discrimination complained of in the Complaint, which is the result of Defendants'

unconstitutional race-based policy of permitting black officers to speak with media outlets and exercise their First Amendment rights while denying the same to Plaintiffs (Second Amended Complaint, Doc. #23, ¶¶ 112-113); and

- Transferred Plaintiffs to another district and made other adverse employment decisions affecting the terms, conditions, and privileges of Plaintiffs' employment, in direct retaliation for Plaintiffs' protected speech and conduct on matters of public concern as guaranteed by the First and Fourteenth Amendments (Second Amended Complaint, ¶¶ 110-111).

Since the Court must construe all factual allegations as true, Plaintiffs have met their burden to demonstrate constitutional violations. And as discussed *infra*, these constitutional rights were clearly established at the time Defendants violated them, so Defendants are not entitled to immunity.

### 2. Defendants have personal involvement in the offending conduct

Defendants insist that Defendants Cranley, Duhaney and Black are entitled to a dismissal for their lack of personal involvement in the § 1983 conduct. To establish liability under 42 U.S.C. § 1983 against an individual defendant, a plaintiff must plead and prove that the defendant was personally involved in the conduct that forms the basis of his complaint. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir.2002); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999)(a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers); *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir.1989).

Plaintiffs' Second Amended Complaint alleges that Defendants Cranley, Duhaney, Black and Isaac supervised Plaintiffs and had control and influence over discipline, work assignments, employee reviews and evaluations, and the general working conditions of Plaintiffs (Second Amended Complaint, Doc. #23, ¶ 17.) Plaintiffs further allege that these Defendants actively

participated in the unconstitutional behavior by implementing race based policies within the Cincinnati Police Department.  Plaintiffs allege that these Defendants:

- instituted and perpetuated unconstitutional race-based policies for hiring, promotion, discipline, and conferring benefits of employment among and upon the ranks of the Cincinnati Police Department (Second Amended Complaint, Doc. #23, ¶ 18); and

- implemented and continue to implement an unconstitutional race-based State Consent Decree and an unconstitutional race-based Federal Consent Decree that predicate promotions among qualified candidates based solely and exclusively on racial criteria (Second Amended Complaint, Doc. #23, ¶ 19).

In addition, Plaintiffs allege that the City engaged in a custom and policy of permitting retaliation and discriminatory conduct, and ratified the conduct described in the Second Amended Complaint by failing to failing to take effective corrective and remedial actions and by failing to impose meaningful discipline or otherwise address the continuing racial tensions and hostile environment created by Pettis despite Plaintiffs' documented complaints.  (Second Amended Complaint, Doc. #23, ¶¶ 101-102). These allegations are sufficient to support a finding of personal involvement against the Defendants, allowing Plaintiffs to proceed against these Defendants individually.

### 3.  Defendants violated Plaintiffs' First Amendment rights

Defendants insist that because Plaintiffs failed to allege that any protected First Amendment conduct was a motivating factor in their transfers, their claims must fail. But Defendants misconstrue the nature of Plaintiffs' claims. Plaintiffs allege that they submitted requests to Defendant Isaac for permission to speak to the media about their lawsuit and such requests were denied without explanation, while Pettis participated in a press conference on June 19, 2018 held by the Sentinel Police Association and its attorney, Alphonse A. Gerhardstein. (Second Amended Complaint, Doc. #23, ¶¶ 58- 60). In other words, Plaintiffs' First Amendment

violations are predicated on the fact that Defendants prohibited them from speaking to the media about the lawsuit for race based reasons.

And these rights were clearly established at the time of the violations, rendering Defendants' conduct objectively unreasonable. Under a § 1983 claim, the constitutional right allegedly violated must be "defined at the appropriate level of specificity before a court can determine if it was clearly established." *Patrizi v. Huff*, 821 F.Supp.2d 926, 934 (N.D. Ohio, 2011) quoting *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his [or her] conduct was unlawful in the situation he [or she] confronted." *Patrizi v. Huff*, 821 F.Supp.2d 926, 934 (N.D. Ohio, 2011), quoting *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

No reasonable official would dispute that denying an individual's First Amendment rights on the basis of race is unconstitutional. *Enoch v. Hogan*, 728 Fed.Appx. 448, 456 (6th Cir.2018) ("The Supreme Court has likewise been clear for more than fifty years that state officials may not enforce rules or regulations that implicate First Amendment rights in a racially discriminatory manner."); *Brown v. Louisiana*, 383 U.S. 131, 143, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966). See also *Whitney v. City of Milan*, 677 F.3d 292, 298 (6th Cir. 2012), in which the court held that a city mayor who prohibited his employees from discussing matters of public concern was not entitled to qualified immunity. In reaching its decision, the court noted that "we have consistently protected a public employee's right to discuss issues of public corruption and workplace discrimination. Our precedent is clear that speech regarding these issues implicates matters of public concern." Id.

17

And despite Defendants' arguments to the contrary, Plaintiffs have suffered far more than "fear" of First Amendment retaliation. Plaintiffs requested permission from Defendants – their supervisors--to speak to the media about their lawsuit, and Defendants rejected their request, without reason and based on Plaintiffs' race. This constitutes a concrete and adverse employment decision denying Plaintiffs their First Amended rights to speak to the media solely because their race.

4.  **Defendants violated Plaintiffs' equal protection rights and engaged in disparate treatment**

Defendants' argument--that Plaintiffs have failed to plead a race based discrimination claim regarding how requests to speak to the media are handled--is incomprehensible. Rather than advance any concrete arguments on this issue, Defendants simply reiterate that the same standard applicable to Plaintiffs' Title VII claims applies to Plaintiffs' Section 1983 claims. Thus, to the extent that Defendants are incorporating the Title VII arguments on the Section 1983 claims, Plaintiffs incorporate their responses to the same.

5.  **Plaintiffs have standing to challenge the Federal and State Consent Decrees**

Defendants insist that Plaintiffs lack standing to challenge the Federal and State Consent Decrees. But Plaintiffs allege that Defendants have engaged and continue to engage in race based conduct in "perpetuity," due to the City Defendants' continued adherence to unlawful State and Federal Consent decrees.  (See Second Amended Complaint, Doc. #23, ¶¶ 18-22). They further allege that the City has ratified the conduct complained of in the Second Amended Complaint by continuing to adhere to the provisions of the illegal State and Federal Consent Decrees by implementing and perpetuating a race-based system for hiring, promotion, and discipline within the Cincinnati. (Second Amended Complaint, Doc. #23, ¶ 103). Accordingly, given that the Defendants' adherence to the State and Federal Consent decrees has resulted in unlawful

discrimination against Plaintiffs in this case, Plaintiffs have sufficiently plead proper standing to survive a Rule 12(c) motion.

### E.  Plaintiffs may proceed with their state law claims under R.C. 4112

Defendants advance a circular argument regarding Plaintiffs' state law claims by insisting that they cannot recover on them because they cannot recover on their Title VII claims. Accordingly, Plaintiffs incorporate their response to Defendants' Title VII claims here.

Further, Defendants are not entitled to immunity under R.C. § 4112. Courts analyze whether a political subdivision is entitled to immunity under a three-tiered process. *Iannuzzi v. Harris*, 7th Dist. No. 10-MA-117, 2011-Ohio-3185, ¶ 9; *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556, 733 N.E.2d 1141 (2000). First, R.C. 2744.02(A)(1) sets forth the general rule that political subdivisions are not liable in damages. *Iannuzzi*, ¶ 9. Second, the court must determine if any of the exceptions to political subdivision immunity as set forth in R.C. 2744.02(B) apply. Id. Third, if the court finds that an exception found in R.C. 2744.02(B) does apply, the court must then consider R.C. 2744.03 which provides defenses and immunities to liability. *Tangler v. Village of Carrollton*, 2018-Ohio-1343, 110 N.E.3d 165, ¶ 15 (7th Dist.).

Under R.C. 2744.03(A)(5), a "political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." Section 2744.03(A)(5) is intended to restore lost immunity unless the political subdivision acted maliciously, in bad faith, or wantonly. *Y.S. v. Board of Educ. of Mathews Local School Dist.*, 766 F.Supp.2d 839, 844 (2011). And under R.C. 2744.03(A)(6), an employee is immune from liability unless 1. the employee's acts or omissions

were manifestly outside the scope of the employee's employment or official responsibilities; or 2. the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner.

Plaintiffs have plead that Defendants acted with bad faith and/or a malicious purpose to defeat immunity under the Ohio statute:

- Pettis's conduct was and is willful, wanton, intentional, and specifically designed to cause duress, humiliation, stress, and anxiety in Plaintiffs (Second Amended Complaint, Doc. #23, ¶ 53); and

- Defendants' conduct was intentional, malicious, willful, and wanton. (Second Amended Complaint, Doc. #23, ¶ 117).

Accordingly, Defendants are not entitled to immunity for their state law claims.

IV.     **Conclusion**

Based on the above arguments, Plaintiffs request this Court to deny the City Defendants' Motion for Judgment on the Pleadings.

<div style="margin-left:40%">

Respectfully submitted,

*/s/Zachary Gottesman*
Zachary Gottesman (0058675)
Gottesman & Associates, LLC
Trial Counsel for Plaintiffs
404 East 12th St., First Floor
Cincinnati, OH 45202-7463
T: 513-651-2121
F: 513-651-2131
zg@zgottesmanlaw.com

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on Nov. 25 , 2019, a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. No copies of this filing are being mailed to any parties, as all parties are currently being served via the Court's electronic filing system and thereby may access this filing through that system.

<div style="margin-left:40%">

*/s/ Zachary Gottesman*
Zachary Gottesman (0058675)

</div>