## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Tamera Brown, et al., | : | Case No. 1:18cv412 |
| Plaintiffs, | : | Judge Dlott |
| | | Magistrate Judge Litkovitz |
| | : | |
| v. | : | **CITY DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR** |
| | : | **RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS** |
| City of Cincinnati, et al., | : | |
| Defendants. | : | |
| | : | |

Defendants City of Cincinnati ("the City"), Mayor Cranley, Captain Pettis, Mr. Duhaney, Mr. Black, and Chief Isaac (collectively, "City Defendants") tender this Reply Memorandum in further support of their Rule 12(c) motion for judgment on the pleadings filed on October 14, 2019. (Doc. 38). All claims should be dismissed as a matter of law.

Respectfully submitted,

**PAULA BOGGS MUETHING (0080018)**
**CITY SOLICITOR**
*s/ Shuva J. Paul*
Shuva J. Paul (0088484)
801 Plum Street, Suite 214
Cincinnati, Ohio 45202
(513) 352-4551
shuva.paul@cincinnati-oh.gov
*Counsel for City Defendants*

**REPLY MEMORANDUM**

I.     **Summary**

In response to the City Defendants' Rule 12(c) motion for judgment on the pleadings, Brown and Ludgatis seek to invoke the continuing violation doctrine to try to rescue their vaguely described grievances from dismissal. This doctrine does not help them here given that the four main areas in which they allege entitlement to relief are "hiring," "promotion," "discipline," and "preferred detail assignments"—areas not within the ambit of the continuing violation doctrine following the Sixth Circuit's reexamination of the doctrine in *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003).

Elsewhere, Brown and Ludgatis argue that they have alleged sufficient factual matter to survive judgment on the pleadings on all their claims. Not so. In their Second Amended Complaint, they do little more than give voice to their general unease with the racial tensions they perceive within a mid-size municipal police department. This is not what *Twombly* contemplated as sufficient to advance beyond the pleadings stage.

Lastly, Brown and Ludgatis fail to state a First Amendment claim. The "race-based" policy that Brown and Ludgatis allege permits African-American officers but not white officers to speak with the media is revealed by Brown and Ludgatis' own pleadings to be the manifestation of their own conclusory allegations. Moreover, the "matter of public concern" they allege they were speaking upon prior to being transferred was, as a matter of law, a mere personnel matter. Judgment on the pleadings is appropriate here and the City Defendants' Rule 12(c) motion should be granted in its entirety.

## II. Failure to Exhaust Administrative Remedies

### A. Timeliness

Brown and Ludgatis allege that consent decrees the City entered into in the 1980s resulted "in continuing racial discrimination against white police officers in perpetuity" (Second Am. Compl., Doc. 23, ¶¶ 19-22). They speak of an "aggregate effect of creating an atmosphere of racial tension" arising from those consent decrees. (Doc. 23, ¶ 29). Given the amorphous, sprawling nature of Brown and Ludgatis' allegations, the City Defendants rightly noted in their Rule 12(c) motion that in Ohio, a deferral state, any allegedly unlawful employment practices occurring more than 300 days before Brown and Ludgatis filed their EEOC charges cannot be heard as a matter of law. (City Defendants' Initial Memorandum, Doc. 38, PageID 533-534). Given that Brown filed her EEOC charge on March 13, 2018 and that Ludgatis filed hers the next day, the City Defendants pointed out that the 300-day statute of limitations applicable to Title VII actions precluded consideration of alleged violations occurring before May 17, 2017 as to Brown's claims and before May 18, 2017 as to Ludgatis' claims. (Doc. 38, PageID 534).

In response, Brown and Ludgatis spelled out for the City Defendants and for the Court that November 16, 2017—the date of the shots-fired incident described in the City Defendants' Rule 12(c) motion (Doc. 38, PageID 527-528)—is the earliest date to be taken into account for purposes of calculating what allegedly unlawful employment practices occurred within the 300-day statute of limitations. (Plaintiffs' Corrected Response, Doc. 45, PageID 587-589). This concession by Brown and Ludgatis leads them to assert that, to challenge any allegedly unlawful City conduct occurring outside the 300-day statute of limitations, the continuing violations doctrine applies. (Doc. 45, PageID 589). As set forth in the next section, the doctrine does not help them here.

**B. The continuing violation doctrine has no application to Brown and Ludgatis' claims concerning "hiring," "promotions," "discipline," and "preferred detailed assignments"**

In *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982), the Supreme Court recognized that an ongoing, continuous series of discriminatory acts may be challenged if one of those discriminatory acts occurred within the limitations period. After *Havens*, the Sixth Circuit recognized two categories of "continuous violations": (1) "where there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation"; and (2) where there is "a longstanding and demonstrable policy of discrimination." *Haithcock v. Frank*, 958 F.2d 671, 677-78 (6th Cir. 1992) (citing *Dixon v. Anderson*, 928 F.2d 212, 217 (6th Cir.1991)).

However, the Sixth Circuit revisited its continuing violation doctrine after the Supreme Court issued a holding differentiating between discrimination claims alleging discrete acts of discrimination and hostile environment claims in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). The *Morgan* Court held that "discrete discriminatory acts are not actionable if time barred, even if they are related to acts alleged in a timely filed [claim]." *Id.* at 536 U.S. at 113. The Court further noted that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and held that "[e]ach discrete, discriminatory act starts a new clock." *Id.* at 113-114. Thus, following *Morgan*, discrete acts that occurred outside the relevant time period became time-barred and could not be rescued by the continuing violations doctrine. *Id.* at 114-115. The Sixth Circuit adapted its doctrine accordingly. *See Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003) (holding that *Morgan* overturned prior Sixth Circuit law addressing serial violations and "plaintiffs are now precluded from establishing a continuing violation exception by proof that the alleged acts of

4

discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period").

This post-*Morgan* distinction requiring plaintiffs to timely challenge "easy-to-identify" discrete acts within the statute of limitations matters in this action. The areas Brown and Ludgatis complain about in sweeping terms—practices that affect "hiring, promotion, discipline, and conferring benefits of employment" (Doc. 23, ¶ 18)—are precisely the areas that the Supreme Court in *Morgan* held give rise to discrete acts that should be "easy to identify." *Morgan* at 113-114. These areas identified by Brown and Ludgatis are not within the ambit of the continuing violation doctrine. This renders the bulk of their complaint too vague to survive *Twombly* review, as further described below.

The "preferred detail assignments" that Brown and Ludgatis allege are "based solely on [] race" are also not within the ambit of the continuing violation doctrine. (Doc. 23, ¶ 24). As pointed out in the City Defendants' initial memorandum (Doc. 38, PageID 531), Brown and Ludgatis identify no detail assignments that they either sought or were denied. But, as with promotions and hiring decisions, decisions concerning which officers receive which detail assignments are discrete acts that come with paper trails containing names and dates—i.e., they are easy to identify—and thus Brown and Ludgatis' reliance on the continuing violation doctrine to advance these claims as presented is unavailing.

### C. The continuing violation doctrine has no application to incidents of discrimination unrelated to Brown and Ludgatis' EEOC charges

Following *Sharpe*, the only remaining category of continuous violations recognized in the Sixth Circuit is the category involving longstanding, demonstrable

policies of discrimination. *Sharpe*, 319 F.3d at 268. The doctrine permits hostile environment claims, which the Supreme Court in *Morgan* observed are advanced under the theory that the unlawful conduct "occurs over a series of days or perhaps years, and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Morgan*, 536 U.S. 115. However, "[u]nrelated incidents of discrimination will not suffice to invoke this exception; rather there must be a continuing over-arching policy of discrimination." *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 408 (6th Cir. 1999), cert. denied, 528 U.S. 1154 (2000) (citing *Dixon v. Anderson*, 928 F.2d 212, 217 (6th Cir. 1991)).

Thus, with regard to their allegations concerning the consent decrees and purported race-based discrimination that arose as a result of those consent decrees, Brown and Ludgatis cannot utilize the continuing violation doctrine to toll the running of the 300-day statute of limitations. To put it another way, the mere existence of alleged race-based policies does not toll the running of the statute of limitations. *See Dixon* at 217 (citing *Conlin v. Blanchard*, 890 F.2d 811, 815 (6th Cir. 1989)). In the absence of identifying a specific denial of a promotion *sought by Brown or Ludgatis* that occurred pursuant to the terms of the consent decree, Brown and Ludgatis' claims about a hostile work environment as predicated upon those consent decrees are not cognizable here. *See Conlin* at 813-815 (holding that the claims of male Michigan state civil servants challenging promotions of females allegedly made pursuant to a Michigan affirmative action plan were time-barred). In short, Brown and Ludgatis have no right to relief for purported discrimination committed against other officers under the complained-of consent decrees.

6

### D. All claims but the transfer-related claims are beyond the scope of the EEOC charges and should not be reviewed here

In their initial memorandum, the City Defendants pointed out that all of Brown and Ludgatis' claims *except for those concerning their transfers* (simultaneously with the transfer of Pettis) following the shots-fired incident are beyond the scope of their EEOC charges and should not be reviewed for the first time here. (Doc. 38, PageID 534-535). In response, Brown and Ludgatis contend that the Court should refrain from applying the Sixth Circuit's general rule here because the City Defendants did not list each of those beyond-the-scope claims. (Doc. 45, PageID 589). The City Defendants believe they have been more than sufficiently specific.

Brown and Ludgatis further assert that to apply the Sixth Circuit's general rule in this manner would be to "emphasize form over substance here." (Id.). Their citation to a Sixth Circuit ruling on procedural grounds in *Portis v. Ohio*, 141 F.3d 632 (6th Cir. 1998) (reversing a district court's dismissal of Title VII claims where the plaintiff's filing of her suit preceded her receipt of her right-to-sue letter from the EEOC) has absolutely no relevance to this issue.

The contents of the EEOC charges that Brown and Ludgatis attached to their pleadings speak for themselves here. (Doc. 23, Page ID 334-337). Brown and Ludgatis included no information on those charges that would reasonably prompt the EEOC to investigate the sweeping uncharged claims contained in their Second Amended Complaint concerning grievances other than their transfers following the November 16, 2017 shots-fired incident. The exhaustion requirement in Title VII actions is meant to "trigger an investigation, which gives notice to the employer of alleged wrongdoing."

7

*Crowder v. Railcrew Xpress*, 557 F. App'x 487, 491 (6th Cir. 2014). Brown and Ludgatis failed to meet this exhaustion requirement.

### III.    Failure to State a Hostile Work Environment Claim

In their initial memorandum, the City Defendants pointed out that Brown and Ludgatis attached to their pleadings their own statements attributing Pettis' treatment of them during the shots-fired incident in no uncertain terms to factors *other* than race or sex. (Doc. 38, PageID 536). Brown and Ludgatis respond that these statements do not "conclusively determine" that race was not a factor and that the statements are "inadmissible," "isolated," and not "dispositive." (Doc. 45, PageID 591). That is not the standard, however, by which their pleadings must be measured.

Brown and Ludgatis fail to appreciate two things here. One, a Rule 12(c) motion is analyzed under the same standard as a Rule 12(b)(6) motion, and "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, may also be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). Two, in *Twombly*, the Supreme Court "disavowed" the pure notice pleading standard of *Conley v. Gibson*, 355 U.S. 41 (1957). *Association of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (explaining *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553-56 (2007)). Following *Twombly*, a complaint must do more than plead facts that are merely consistent with liability— otherwise, it "stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570) (internal quotation omitted).

In application, this means a "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal

theory." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citation omitted). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.*

As set forth above under the discussion of the continuing violation doctrine, Brown and Ludgatis complain of a host of allegedly discriminatory acts that should have been easy for them to identify precisely because Brown and Ludgatis allege them to occur in the areas of public hiring, promotion, discipline, and decisions concerning "preferred detail assignments"—areas that leave clear, easy-to-locate paper trails. Yet, after twice amending their complaint, Brown and Ludgatis leave the reader still with an overarching sense of vagueness about how this "atmosphere of racial tension" created by the "aggregate effect" of unidentified department policies operates in terms of discrete acts of discrimination. In response, Brown and Ludgatis contend they "allege far more serious conduct than a single incident" and that their Second Amended Complaint "contains numerous allegations detailing the severe, pervasive race based policies that exist in the Cincinnati Police Department." (Doc. 45, PageID 593). The problem is that, with the exception of that single shots-fired incident, they do not allege facts showing that *they* (rather than other officers not parties to this action) were the parties injured by these allegedly discriminatory policies. Title VII simply does not permit Brown and Ludgatis to be stand-ins for these other officers purportedly harmed. As argued in the City Defendants' initial memorandum, standing matters and Brown and Ludgatis fail in their burden of establishing it. (Doc. 38, PageID 543).

Particularly in light of their own attachments to the pleadings containing their own contemporaneous statements disavowing race-based or sex-based reasons for Pettis' treatment of them, Brown and Ludgatis' allegations are not sufficient to raise the

Case: 1:18-cv-00412-MWM-KLL Doc #: 47 Filed: 12/23/19 Page: 10 of 14 PAGEID #: 614

right to relief above a speculative level. Their exercise in giving voice to their general unease with the racial tensions they perceive within a mid-size municipal police department should not survive *Twombly* review. *Eidson* at 637 ("Even viewing the allegations in the light most favorable to plaintiff, they fail, due to their vagueness, to warrant a reasonable inference [of liability]").

## IV.    Failure to State a Title VII Retaliation Claim

In their initial memorandum, the City Defendants pointed out that Brown and Ludgatis failed to allege any facts showing that they engaged in protected activity *before* the transfers, and therefore fail to state a Title VII retaliation claim. (Doc. 38, PageID 538-539). It is beyond dispute that Brown and Ludgatis, in complaining about the shots-fired incident that they themselves allege resulted in their transfers, contended that their treatment by Pettis was motivated by factors other than race or sex—*i.e., they did not engage in protected activity*. (Doc. 38, PageID 527-528; Doc. 23, PageID 338, Exh. 6 ("Brown Memo Dated November 26, 2017 to Chief Isaac"); Doc. 23 PageID 341, Exh. 8 ("Ludgatis Memo Dated November 28, 2017 to Chief Isaac"). In response, Brown and Ludgatis do not contest the City Defendants' descriptions of the contents of their memos—which is understandable given the memos are attached to their pleadings (Doc. 45, PageID 595-596). Brown and Ludgatis nonetheless insist they engaged in protected activity—except that they do not allege what that protected activity was, when or where it occurred, or which defendants were aware of that supposed protected activity. (Doc. 45, PageID 595; Doc. 23, ¶ 96). Their conclusory statement is insufficient to survive review under Twombly, especially given that they must also allege facts showing that one or more of the City Defendants knew or were aware of such purported protected activity. *See Mulhall v. Ashcroft*, 287 F.3d 543, 551 (6th Cir. 2002).

## V.      Failure to State a Claim Under Section 1983

In response to the City Defendants' argument that Brown and Ludgatis failed to state a claim under Section 1983 in numerous ways, Brown and Ludgatis assert that they were barred from speaking to the media under a race-based policy that permits black officers but not them to exercise their First Amendment rights. (Doc. 45, PageID 598). However, Brown and Ludgatis attached to their pleadings a public record plainly reading that Pettis, who is African-American, was disciplined for speaking to the media rather than permitted to speak to the media as Brown and Ludgatis allege. (Doc. 23, PageID 407. This renders their "race-based policy" allegation conclusory and not entitled to the presumption of truth. *See Ashcroft*, 556 U.S. at 679.

In response, Brown and Ludgatis also assert that their transfers to other districts were "in direct retaliation for Plaintiffs' protected speech and conduct on matters of public concern." (Doc. 45, PageID 598). However, the internal complaints they made— and that they subsequently attached to their Second Amended Complaint (Doc. 23, PageID 338-341)—reveal no matters of public concern. Their questioning of how Pettis conducted roll call and spoke to them in ways they found disparaging does not qualify as a matter of public concern. *See, e.g., Boulton v. Swanson*, 795 F.3d 526, 532 (6th Cir. 2015) (noting the Sixth Circuit Court of Appeals has found assertions of incompetence and poor management decision-making to fall in the category of "personnel matters" rather than "matters of public concern").

## VI.    The Appropriateness of Judgment on the Pleadings

Brown and Ludgatis erroneously assert that a court "does not address the merits of the claims set forth in the complaint on a motion for judgment on the pleadings." (Corrected Plaintiffs' Response, Doc. 45, PageID 585-586). That is simply not so. To

survive a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

None of the cases cited by Brown and Ludgatis call for the Court to forego or delay the required inquiry into the sufficiency of their allegations. The first case they cite, *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 698-699 (6th Cir. 1978), stands instead for the proposition that a district court may not *sua sponte* dismiss an action for lack of personal jurisdiction against defendants where those defendants through their previous actions had waived all objections on that account. *Rauch* at 698-699 (comparing Federal Civil Procedure Rule 12(b) with Rule 12(h)). *Rauch* does not apply here; the City Defendants have raised defenses that they have not waived. Unlike the defense of lack of personal jurisdiction, "the defense of failure to state a claim upon which relief can be granted is not subject to waiver and may be raised in a responsive pleading, a motion for judgment on the pleadings, or at trial." *Braun v. Ultimate Jetcharters, Inc.*, No. 5:12-cv-1635, 2013 U.S. Dist. LEXIS 22325 (N.D.Ohio 2013), ¶ 7 (citations omitted).

The second case cited by Brown and Ludgatis, *Constitution Party of Ohio v. Brunner*, No. 2:08-cv-666, 2009 U.S. Dist. LEXIS 26064 (S.D.Ohio 2009), merely exemplifies how a Rule 12(c) motion can be a "particularly appropriate" vehicle for resolving pure questions of law. *Id.* at ¶ 3 (granting Ohio Secretary of State's motion for judgment on the pleadings after denying plaintiffs' motions for preliminary injunctions on mootness grounds). Moreover, the district court there *did* address the merits of the claims. *Id.* at ¶¶ 4-7 (concluding that a political candidate seeking to compel Ohio to

place his chosen party designation on an election ballot was not substantially likely to prevail on the merits and that the exception to the mootness doctrine did not apply in his case). This Court certainly can and should address the merits of Brown and Ludgatis' claims at this stage.

## VII.  Conclusion

The City Defendants request that the Court grant their Rule 12(c) motion for judgment on the pleadings in its entirety.

Respectfully submitted,

**PAULA BOGGS MUETHING (0080018)**
**CITY SOLICITOR**

*s/ Shuva J. Paul*
Shuva J. Paul (0088484)
801 Plum Street, Suite 214
Cincinnati, Ohio 45202
(513) 352-4551
shuva.paul@cincinnati-oh.gov
*Counsel for City Defendants*

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed on December 23, 2019 with the Clerk of Courts via the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system, and they may access this filing through that system.

*s/ Shuva J. Paul*
Shuva J. Paul (0088484)
