IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| TAMERA BROWN, et al., | : | Case No. 1:18-cv-412 |
| | : | |
| Plaintiffs, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| CITY OF CINCINNATI, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**ORDER OVERRULING OBJECTIONS (DOC. 53), ADOPTING REPORT & RECOMMENDATIONS (DOC. 50), GRANTING MOTIONS FOR JUDGMENT ON THE PLEADINGS (DOCS. 37, 38), AND TERMINATING ACTION**

---

This case is before the Court on Plaintiffs' Objections (Doc. 53) to the Report & Recommendations (the "Report") (Doc. 50) entered by United States Magistrate Judge Karen L. Litkovitz. In the Report, Magistrate Judge Litkovitz recommended that the Court grant the motion for judgment on the pleadings (Docs. 37) brought by Defendant Danita Pettis (in her individual capacity) and the separate motion for judgment on the pleadings (Doc. 38) brought by Defendants City of Cincinnati, John Cranley, Harry Black, Patrick Duhaney, Eliot Isaac, and Pettis (in her official capacity). For the reasons below, the Court finds that Plaintiffs' Objections are not well-taken and are therefore **OVVERULED**. The Court therefore **GRANTS** Defendants' motions for judgment on the pleadings and **TERMINATES** this action.

# FACTS[1]

This is an action for alleged race and sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 2000e-3, and state law, as well as claims under 42 U.S.C. § 1981 and § 1983. (Doc. 23.) As alleged in the Second Amended Complaint, Plaintiffs Tamera Brown and Joy Ludgatis are white female police officers who have been employed by the City of Cincinnati. Defendant Danita Pettis, an African American female Police Lieutenant, directly supervised Plaintiffs and controlled their discipline, work assignments, employee reviews and evaluations, and general working conditions. In addition to Pettis, Defendants Cranley, Duhaney, Black, and Isaac also had supervisory authority over Plaintiffs.

### A.  Internal Complaints and Subsequent Investigation

On November 26, 2017, Brown filed an internal complaint against Pettis with Captain Jack Martin and Defendant Chief Eliot Isaac.[2] Her complaint referenced two incidents, one in which Pettis allegedly chose not to release third shift officers in roll call to render assistance to white second shift officers. In the second incident, Pettis allegedly exhibited hostile, demeaning and unprofessional behavior toward third shift officers.

On November 28, 2017, Ludgatis filed an internal complaint alleging that she was "subjected to humiliating, demeaning, and unprofessional verbal abuse by Pettis."

---

[1] This section contains an abbreviated version of the more complete description of the Second Amended Complaint and its exhibits contained in the Magistrate Judge's Report.
[2] Magistrate Judge Litkovitz properly considered the exhibits to Plaintiffs' Second Amended Complaint, which included internal complaints, investigation reports, and Ohio Civil Rights Commission (OCRC) charges. Plaintiffs did not object to the consideration of these documents.

(Doc. 23 at ¶ 44.) Ludgatis's complaint referenced a "hostile verbal assault" on November 22, 2017, and the same November 24, 2017 incident referenced in Brown's complaint. (Doc. 23 at ¶ 45.)

Investigation documents attached to the Second Amended Complaint show that Pettis also filed an internal complaint regarding an incident on November 26, 2017. Pettis claimed that, on that date, Lieutenant Dan Hills advised District Four officers during roll call to file hostile work environment complaints against Pettis.

On December 5, 2017, Executive Assistant Chief David Bailey informed Chief Isaac that the Internal Investigations Section (IIS) commenced an investigation due to internal complaints filed by Pettis, Ludgatis, and Brown. Bailey described the investigation's purpose as follows:

> The incident stems from a decision made by Lieutenant Pettis relative to a firearm discharge situation at 1234 Myrtle Avenue on the evening on November 16, 2017. Based on the information received to date by CPD Administration, that decision received significant and vocalized dissent from several third shift officers. In particular, Police Officers Joy Ludgatis and Tamera Brown expressed extreme dissatisfaction with Lt. Pettis's decision and made numerous negative remarks about Lt. Pettis to other CPD staff on that topic.
>
> On the evening of November 22, 2017, Lt. Pettis, in apparent reaction to those comments, made negative and discrediting comments about Officer Ludgatis in the third shift roll call while in the presence of other shift members and supervisors. Lt. Pettis allegedly conducted a similar roll call again on the evening of November 24, 2017, admonishing those critical of her leadership and decision making.
>
> On November 26, the Fraternal Order of Police President Sergeant Dan Hils intervened and attended the District Four Third Shift roll call to address the incident. During his visit, Sergeant Hils made numerous negative comments about Lieutenant Pettis in personal and professional contexts, and he allegedly urged the shift to continue to question and

3

> oppose her leadership. Although the Internal investigation is only in its preliminary stages, the conduct exhibited by CPD personnel Pettis, Hils, Ludgatis, and Brown is deeply disappointing from a management perspective. First of all, as members of a highly regarded police agency, our members should epitomize conflict resolution and problem-solving abilities. Secondly, the conduct involves members at almost each rank of the third shift at District Four, which if allowed to continue, will undoubtedly adversely impact the third shift if not the entire district operation.
>
> Due to the negative district-wide impact from this very unfortunate chain of events, it is clear that the potential negative consequences of this current confrontational environment must be minimized and any future incidents of this nature must be prevented. In the meantime, District Four must have the opportunity to recover and resume operations at peak efficiency. This can only occur if the three principal parties are transferred out of District Four and separated. It is therefore my recommendation that Lieutenant Danita Pettis, and Police Officers Joy Ludgatis and Tamera Brown be transferred to new assignments immediately, even while the remainder of the Internal investigation proceeds. At the conclusion of the IIS investigation, additional administrative actions may be warranted.

(Doc. 23 at PageID# 344-45.) Later in December 2017, Plaintiffs were transferred to different shifts outside of District Four pending the completion of the investigation. (*Id.* at ¶ 48.)

The investigation documents show that Ludgatis and Brown were exonerated for allegedly pressuring others to sign complaints against Pettis. (Doc. 23 at PageID# 401-404.) Pettis was exonerated from allegations made by Brown related to the shots-fired incident but received minor discipline for being discourteous at roll call and incidents related to the investigation. (*Id.* at PageID# 404-409.)

### B. Charges of Discrimination

In March 2018, Plaintiffs filed charges of discrimination with the OCRC. Brown specifically alleged that Pettis subjected her to a hostile work environment based on her

4

race and sex. She further alleged that management transferred her to another district in retaliation for complaining about Pettis's discriminatory conduct. Ludgatis also alleged that Pettis had discriminated against her on the basis of her race and sex, and that management had failed to take corrective action. Plaintiffs further allege that they have been denied permission to speak publicly about their allegations, without any explanation from their superiors.

### C. Allegations of "Routine Race-Based Discipline"

Plaintiffs also allege that Defendants instituted race-based policies that created a "double standard for officer discipline." (Doc. 23 at ¶ 35, 61.) They argue, for example, that Pettis "engaged in conduct as a police officer that, but for her race, would have resulted in discipline and/or criminal charges against her." (*Id.* at ¶ 34.) Plaintiffs refer to incidents in which African American officers and Caucasian officers allegedly engaged in substantially similar conduct, but the Caucasian officers received more severe punishment.

## LEGAL STANDARD

As required by 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), the Court has made a de novo review of the record in this case. Generally, motions for judgment on the pleadings under Fed. R. Civ. P.12(c) are reviewed under the same standard that applies to a Rule 12(b)(6) motion to dismiss. *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001); *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). Accordingly, the Court construes the complaint "in the light most favorable to the nonmoving party, accept[s] the well-pled factual allegations as true, and determine[s]

5

whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336–37 (6th Cir. 2007). The Court does not, however, accept legal conclusions or unwarranted factual inferences as true. *Id.* To withstand a Rule 12(c) motion to dismiss, a complaint must allege facts—either directly or by inference—that support all the material elements of the plaintiff's claims under a viable legal theory. *Id.* (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir.2005), cert. denied, 547 U.S. 1111 (2006).

## ANALYSIS

Plaintiffs contend the Magistrate Judge erred in her analysis of each of their claims for hostile work environment, retaliation, and violation of their First Amendment rights. The Court addresses Plaintiffs' objections regarding each set of claims in turn below.

### A. Hostile Work Environment Claims

Plaintiffs contend the Magistrate Judge incorrectly rejected two allegations in the Second Amended Complaint. They argue, had those allegations been accepted, their hostile work environment claims would have survived Defendants' Rule 12(c) motions.

The Magistrate Judge recited the correct standard for establishing a hostile work environment claim. Namely, a plaintiff must show: (1) she was a member of the protected class; (2) she was subjected to unwelcome harassment, based on sex or race; (3) the harassment had the effect of unreasonably interfering with her work performance and created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.

6

*Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 878 (6th Cir. 2013) (citing *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008)). In terms of the third factor, the conduct must be "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Id.* (quoting *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000)).

In determining whether a work environment is objectively hostile or abusive, courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Conduct that is "merely offensive" is insufficient to support a hostile work environment claim. *Harris*, 510 U.S. at 21. "[C]omments and harassing acts of a continual nature are more likely to be deemed pervasive." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008). Furthermore, "courts must determine whether the workplace is so permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Grace*, 521 F.3d at 678-79 (quoting *Harris*, 510 U.S. at 23) (internal quotes omitted).

The first allegation that Plaintiffs' argue should not have been rejected is that Pettis "formally requested that Brown and Ludgatis be transferred to another district."

7

(Doc. 23 at ¶ 47.) The Magistrate Judge noted that the Pettis's internal complaint does not mention Brown and Ludgatis, and that Chief Bailey had recommended the transfer of Pettis, Brown, and Ludgatis at the start of the investigation—as set forth in his memorandum quoted in the Facts section. (Doc. 50 at PageID# 630, n.4.) Both of these assertions are true.

Plaintiffs, however, cite an internal memorandum dated December 1, 2017 from Pettis to Chief Isaac, attached as Exhibit 11 to the Second Amended Complaint. (Doc. 23 at PageID# 346.) In the memorandum, Pettis asks Chief Isaac to temporarily transfer Ludgatis and Brown pending the findings related to Pettis's EEOC complaint. (In the complaint, Pettis claimed that Ludgatis and Brown had created and continued to create a hostile work environment for her.) Plaintiffs are therefore correct that the allegation that Pettis formally requested their transfer is consistent with the documents attached to the Second Amended Complaint. As discussed below, however, the Magistrate Judge's error in this regard does not save Plaintiffs' hostile environment claims from dismissal.

The second allegation raised by Plaintiffs' objections is that "Pettis engaged in various misconduct, but the City failed to impose meaningful discipline or otherwise address the continuing racial tensions and hostile environment created by Pettis." (Id. at ¶ 50.) The Magistrate Judge similarly found that this allegation was inconsistent with the documents attached to the Second Amended Complaint. (Doc. 50 at PageID# 630, n.5.) She noted that, although Pettis was exonerated with respect to the shots-fired incident, she was disciplined for her conduct during other incidents. Here, the Magistrate Judge's reasoning is sound. It is reasonable to conclude that "meaningful

discipline" is not lacking where an employee was cleared of the alleged misconduct.

Even crediting Plaintiffs' allegation that Pettis requested that Ludgatis and Brown be transferred, the Amended Complaint still lacks sufficient factual allegations to reasonably infer that Plaintiffs were subjected to harassment based on their race or sex. Plaintiffs refer to the alleged racially motivated policies in the department, but the Magistrate Judge methodically considered each of these policies in the Report. The Court finds no error in her conclusion that "plaintiffs fail to connect the dots on how these policies apply to *them* specifically and how these policies relate to *their* work environment, internal complaints about Pettis in November 2017, and subsequent transfers, all of which for the basis of their Title VII claims." (Doc. 50 at PageID# 633.)

The remainder of Plaintiffs' objections to the dismissal of their hostile environment claims merely rehash the arguments from their memorandum in opposition. The Court sees no error in the Magistrate Judge's consideration of those arguments. The hostile work environment claims in Counts I, II, and V are dismissed.

### B. Retaliation Claims

Plaintiffs argue that the Magistrate Judge erred in her consideration of their retaliation claims for two reasons. First, they again refer to the Magistrate Judge's rejection of the allegation that Pettis requested their transfer to another district. Second, the object to the Magistrate Judge's conclusion that Plaintiffs failed to allege facts showing that they experienced retaliation based on race or sex. The arguments, however, do not address the principal basis for the Magistrate Judge's dismissal of the retaliation claims: that Plaintiffs do not allege that they engaged in any protected

9

activity. Plaintiffs have not identified any error in the analysis of that issue. Plaintiffs' retaliation claims are therefore dismissed.

### C. First Amendment Claims

The Magistrate Judge recommended dismissal of Plaintiff's First Amendment claims because they failed to allege that they engaged in speech protected under the First Amendment. (Doc. 50 at PageID# 647-51.) Plaintiffs argue that the Magistrate Judge was mistaken because their speech was made both as a private citizen and regarding a matter of public concern. Neither argument is persuasive. Plaintiffs do not cite to any material factual allegations that the Magistrate Judge failed to consider in her analysis, which the Court finds persuasive and adopts as its own. Accordingly, Plaintiffs' First Amendment claims are hereby dismissed.

### CONCLUSION

For the reasons above, Plaintiffs' Objections (Doc. 53) are **OVERRULED**. The Court **ADOPTS** the Report (Doc. 50), except as inconsistent with this opinion, and rules as follows:

1. Defendant Pettis's Motion for Judgment on the Pleadings (Doc. 37) is **GRANTED**.
2. The City Defendants' Motion for Judgment on the Pleadings (Doc. 38) is **GRANTED**.
3. This case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND